**Dick NIELSON, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, in his capacity as Secretary of Health and Human Services, Defendant–Appellee.**

No. 92–4099.

United States Court of Appeals, Tenth Circuit.

May 5, 1993.

David J. Jordan, U.S. Atty., Carlie Christensen, Asst. U.S. Atty., Salt Lake City, UT (Ronald S. Luedemann, Chief Counsel, Region VIII, Thomas A. Nelson, Jr., Deputy Chief Counsel, Region VIII, Deana R. Ertl-Lombardi, Asst. Regional Counsel, Dept. of Health & Human Services, Denver, CO), for defendant-appellee.

Before SEYMOUR and ANDERSON, Circuit Judges, and RUSSELL,* District Judge.

SEYMOUR, Circuit Judge.

Claimant Dick Nielson appeals from the district court's order affirming the decision of the Secretary of Health and Human Services to deny his request for social security benefits.[1] We reverse.

Mr. Nielson applied for disability insurance benefits on October 6, 1988, alleging disability since May 10, 1987, due to lower spinal disc deterioration. Aplt.App. at 110. He was 56 years old at the alleged onset of disability. His request for benefits was denied administratively. After a de novo hearing, the administrative law judge (ALJ) denied his application. *Id.* at 69. The Appeals Council denied his request for review. *Id.* at 63. The decision of the ALJ therefore became the final decision of the Secretary. *Emory v. Sullivan,* 936 F.2d 1092, 1093 (10th Cir.1991). Mr. Nielson filed this action in federal court, seeking review of the Secretary's decision. The case was referred to a magistrate judge, who concluded that Mr. Nielson should be awarded benefits. Aplt. App. at 24. The district court disagreed and affirmed the Secretary's decision. *Id.* at 5.

Our review of the Secretary's decision is limited to "whether his findings are supported by substantial evidence in the record and whether he applied the correct legal standards." *Emory,* 936 F.2d at 1093. The " '[f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles

Maureen L. Cleary, Salt Lake City, UT, for plaintiff-appellant.

---

* Honorable David L. Russell, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that

oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

have been followed is grounds for reversal.'" *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir.1984) (quoting *Smith v. Heckler*, 707 F.2d 1284, 1285 (11th Cir.1983)).

■ The Secretary has established a five-step evaluation process under the Social Security Act for determining whether a claimant is disabled within the meaning of the Act. *See Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir.1988) (describing five steps in detail). The claimant bears the burden of proof through step four of the analysis. Once it is determined at step four that a claimant cannot perform his past relevant work, the claimant has established a prima facie case of disability. At step five, the burden shifts to the Secretary to show that a claimant can perform work that exists in the national economy. *See id.* at 751. The Secretary must consider a claimant's residual functional capacity, age, education, and work experience. *Emory*, 936 F.2d at 1094.

■ In this case, the ALJ reached the fifth step of the pertinent analysis, concluding that Mr. Nielson could perform a significant number of jobs in the national economy. Aplt.App. at 75. At the time of the ALJ's decision, Mr. Nielson was fifty-nine years old, had a limited education, and had worked as a truck-tire service manager for over twenty-seven years before the claimed onset date of disability. The ALJ concluded that Mr. Nielson retained the capacity to perform less than the full range of sedentary work, but that his skills were transferable to a significant number of jobs. *Id.*

■ At fifty-nine years of age, Mr. Nielson was a person of "advanced age" according to the Secretary's regulations. *See* 20 C.F.R. § 404.1563(d). The Secretary must overcome a higher burden at step five to deny benefits to claimants of advanced age. *Emory*, 936 F.2d at 1094. The regulations state: "We consider that advanced age (55 or over) is the point where age significantly affects a person's ability to do substantial gainful activity. If you are severely impaired and of advanced age and you cannot do medium work, you may not be able to work *unless you have skills that can be used in (transferred to) less demanding jobs* which exist in significant numbers in the national econo-

my." 20 C.F.R. § 404.1563(d) (emphasis added). "'Accordingly, it is not enough that persons of advanced age are capable of doing unskilled work; to be not disabled, they must have acquired skills from their past work that are transferable to skilled or semiskilled work.'" *Emory*, 936 F.2d at 1094 (quoting *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.1990)).

The ALJ concluded that Mr. Nielson is limited to sedentary work and is limited further to less than a full range of that type of work due to his inability to sit more than forty-five minutes without changing positions. Aplt.App. at 75. Where a claimant of advanced age is limited to sedentary work, the regulations further discuss transferability: "In order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over), *there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry.*" 20 C.F.R. Part 404, Subpt. P, App. 2, Rule 201.00(f) (emphasis added). Section 4.c. of Social Security Ruling 82–41, *Disability—Transferable skills; applicability under the Medical–Vocational Guidelines* [March 1982–Feb. 1983 Transfer Binder] Unempl.Ins.Rep. (CCH) ¶ 14,168 at 2199–43 (July 1982), further defines transferability of skills for persons of advanced age: "In order to establish transferability of skills for such individuals, the semiskilled or skilled job duties of their past work must be so closely related to other jobs which they can perform that *they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation.*" *Id.* at 2199–46 (emphasis added). Section 6 of that ruling requires the ALJ to make supporting findings of fact in determining whether a claimant's job skills are transferable, including identifying the acquired job skills and the positions to which those skills are transferable. *Id.* at 2199–47 to 2199–48. The agency's rulings are binding on an ALJ. *Terry*, 903 F.2d at 1277 (citing *Service v. Dulles*, 354 U.S. 363, 388, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403 (1957)).

■ At step five, therefore, the Secretary had the burden to demonstrate that Mr.

Nielson had skills which were transferable to closely related skilled or semi-skilled work with little or no vocational adjustment. The Secretary meets the applicable burden if the ALJ's decision is supported by substantial evidence in the record. *See Gossett v. Bowen,* 862 F.2d 802, 804 (10th Cir.1988). Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). "We examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met." *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800–01 (10th Cir.1991). Moreover, where a claimant of advanced age is concerned, we review the record for specific findings identifying the claimant's acquired job skills and the positions to which those skills are easily transferable.

Our review of the record as a whole convinces us that the Secretary failed in his burden. During the hearing before the ALJ, a vocational expert identified Mr. Nielson's skills in his past work as a "truck-tire service manager" as including product knowledge, selling, supervising, record keeping, and dispatching. She was then given the following hypothetical by the ALJ:

> If a person were 53 years of age and had pretty much done the same job all his life, that is, a truck service manager, male, with an educational level of tenth grade—he was able to lift a maximum of 15 pounds and 10 pounds repeatedly. He could only walk four blocks, stand for 45 minutes, sit for 45 minutes at a time without changing positions. Could that person do his past relevant work?

Aplt.App. at 99. She testified that, because Mr. Nielson was limited in his lifting ability to sedentary work, he could not return to his previous work as performed in the national economy. *Id.* at 100–01. She further testified that only Mr. Nielson's skill as a dispatcher was transferable, and that approxi-

mately 83,000 dispatching jobs existed in the national economy. *Id.* at 100. Significantly, however, the ALJ had misstated Mr. Nielson's age in the hypothetical as 53 instead of 59, which was his actual age at the time of the hearing when the vocational expert was asked to assess his ability to be gainfully employed. Although Mr. Nielson's age was subsequently clarified on the record, *id.* at 102, the vocational expert was never re-asked the hypothetical with the proper age included.

This error becomes more problematical because the ALJ never raised with the vocational expert the significance of Mr. Nielson's advanced age and the resulting vocational adjustment issue. Consequently, the expert gave no opinion on whether, as required by the applicable regulations and rules, little or no vocational adjustment would be required for Mr. Nielson to transfer his dispatching skill to other identified jobs or whether he could perform those jobs at a high degree of proficiency with a minimal amount of job orientation.

■ A finding of transferability, alone, does not satisfy the Secretary's regulations requiring very little vocational adjustment. "Not only must [a claimant's] skills be transferable, there must be little vocational adjustment required...." *Terry,* 903 F.2d at 1279. *See Burton v. Secretary of Health & Human Servs.,* 893 F.2d 821, 824 (6th Cir. 1990) ("It is not enough, however, that the claimant possess transferable skills; their transfer must require little if any vocational adjustment."). Here the record does not contain the requisite evidence that Mr. Nielson's dispatching skill was transferable with little or no vocational adjustment. When the transferability of skills arises with respect to a claimant of advanced age, the ALJ must present the vocational expert with a hypothetical that asks whether or not the skill is transferable with little or no vocational training or job orientation. The ALJ clearly failed to do so here. Moreover, the ALJ failed to make findings specifically targeted at the level of vocational adjustment needed for Mr. Nielson to enter potential dispatching positions, as required by Social Security Rul-

ing 82–41.[2] Because the ALJ failed to apply the correct legal principles, his finding of no disability is not supported by substantial evidence.

■ " 'In reversing the Secretary's determination, it is within our discretion to remand to the Secretary for a further hearing or direct the district court to award benefits.' " *Emory*, 936 F.2d at 1095 (quoting *Dixon v. Heckler*, 811 F.2d 506, 511 (10th Cir.1987)). The Secretary has not articulated any reason why he made no findings with respect to the level of adjustment needed for Mr. Nielson to perform a dispatching job, even though his own regulations require such findings. *See Emory*, 936 F.2d at 1095. Mr. Nielson applied for benefits on October 6, 1988, over four years ago, and is now sixty-two years old, or "close to retirement age" under the regulations. *See* 20 C.F.R. § 404.-1563(d). A remand at this juncture would therefore require the Secretary to demonstrate in addition that Mr. Nielson's skills are "highly marketable." *Id.; see Emory*, 936 F.2d at 1094. Under these circumstances, we decline to remand for a further hearing. *See Allen v. Bowen*, 881 F.2d 37, 44 (3d Cir.1989) (where claimant established prima facie case of entitlement, record was fully developed, and Secretary failed to show good cause for failure to adduce relevant evidence, no reason to remand). Accordingly, we direct the district court to award benefits.[3]

The judgment of the United States District Court for the District of Utah is REVERSED and REMANDED.

---

2. We note that the Appeals Council, in denying Mr. Nielson's request for review of the ALJ's decision, stated that the vocational expert had testified that little or no adjustment would be required in performing the dispatcher job. Unfortunately, the Appeals Council misread the record. The vocational expert testified that Mr. Nielson's past work as a truck-tire service manager was "highly transferable" to other automotive services manager jobs. Aplt.App. at 101. However, the expert also testified that because Mr. Nielson could not perform his past work, the only transferable skill he possessed was dispatch-

ing. The expert did not testify that the dispatching skill alone was highly transferable. As set out above, the expert gave no testimony on the amount of vocational adjustment necessary to transfer Mr. Nielson's dispatching skill to other identifiable jobs in the economy.

3. Given our disposition of this appeal on other grounds, we need not reach Mr. Nielson's contention that the Secretary did not adequately consider his complaints of back pain.