**David T. PINNT, Plaintiff,**

v.

**Shirley CHATER, Commissioner of Social Security, Defendant.**

No. CIV.A. 96–K–2547.

United States District Court,
D. Colorado.

Dec. 23, 1997.

Mary Frances McCracken, Elder & Phillips, P.C., Grand Junction, CO, for Plaintiff.

Robert D. Clark, U.S. Attorney's Office, Denver, CO, for Defendant.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

David T. Pinnt seeks judicial review of a final decision of the Social Security Commissioner denying him Social Security Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433 for the period September 1990 through February 1993. Jurisdiction exists under 42 U.S.C. § 402(g).

Pinnt asserts the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence and is therefore subject to reversal.[1] I agree.

### I. *Background.*

David Pinnt was born on February 9, 1956, in Grand Junction, Colorado, the seventh of ten children. His mother died when he was aged twelve. During high school, Pinnt contributed to his own support and that of his younger siblings working at a gas station, loading trucks, and training horses. After graduating, he began an apprenticeship for pipe-fitters and welders, completed it in 1977, and became a member of the Brotherhood of Blacksmiths and Boilermakers. Until the accident giving rise to this claim, Pinnt

worked consistently in that trade, one involving heavy skilled work.

In 1978, Pinnt and his family moved from Colorado to Oroville, California. On April 4, 1989, while working in Woodland, California, Pinnt was struck in the front of the head by a "come-along," a hand winch used to lift heavy objects. It knocked him off the scaffold on which he was working at a height of 150 feet. He fell approximately thirty to fifty feet to a lower scaffold, sustaining a loss of consciousness, concussion and back injury.

As a result, Pinnt suffered persistent severe discomfort in the cervical, thoracic and lumbar spine, radiating pain into the right lower extremity. He was taken to Woodland Memorial Hospital where he was observed and treated. (R. at 86–87.) His complaints persisted and he received conservative treatment including chiropractic care and neurological evaluation. (R. at 90.)

Pinnt was anxious to return to work and, about two weeks after the accident, took a light duty welding job. He had continuing discomfort, however, and was laid off after three days. (R. at 90–91 .) On May 1, 1989, he tried another job which required him to do all aspects of welding and boilermaking. (R. at 91.) His back symptoms increased substantially and, by May 19, 1989, he had to give up the job because he could not meet its physical requirements. (R. at 91.)

In July 1989, Pinnt and his family moved back to Colorado. He continued to suffer from persistent back discomfort, predominantly variable pain in the low back aggravated by many of his usual activities involving bending, stooping, climbing or sitting for extended periods. (R. at 92.) He also had neck and upper back discomfort, aggravated by activities such as driving which required turning his head sharply, as well as intermittent pain extending down the right leg. (R. at 92.)

During the relevant time period, Pinnt was under the care of Michael P. Dohm, M.D. and Jeffrey M. Nakano, M.D. of Grand Mesa Orthopaedics, P.C. (R. at 109–124.) He re-

---

**1.** The Appeals Council declined to review the Administrative Law Judge's findings making it

the Commissioner's final decision. (R. at 4.)

ceived physical therapy, chiropractic care, anti-inflammatory and pain medication (Flexeril, Soma, Feldine and Tylenol) which resulted in only limited improvement. (R. at 56, 92, 109–124.) His treating physicians gradually gave him to understand he would be permanently unable to return to his usual occupation. (R. at 114, 116.)

In October 1990, at the instance of his vocational rehabilitation counselor, Pinnt returned to Oroville, California for a construction estimator training program. He completed the program which lasted eight hours a day, five days per week for fourteen weeks. Thereafter he returned to Colorado and tried to find work but discovered most construction estimator jobs required physical exertion that was beyond him. (R. at 57, 93.) He also applied for other kinds of jobs such as selling lumber or pipe or working as a clerk. (R. at 93.) He was repeatedly rejected for such jobs due to lack of education and experience. (R. at 93.)

On February 19, 1993, Pinnt returned to work part-time as a boilermaker and welder. (R. at 57, 70.) He worked sixty-eight days in 1993 and needed physical therapy after each job he completed. (R. at 57.) His complaints of low back pain and right lower and upper extremity pain persisted. He continued in a physical therapy program and taking Ibuprofen for pain as needed. (R. at 69, 112.)

Pinnt was previously awarded disability benefits from November 1989 through August 1990. On December 1, 1993, he filed an application for benefits pursuant to Title II of the Social Security Act for a closed period of disability from September 1990 through February 19, 1993. (R. at 31–33.) He claimed during the relevant period he was unable to sit or stand for more extended periods and his ability to lift, bend, squat, or carry loads was severely limited. (R. at 57.) He needed to lie down with his feet elevated daily and the medication he took made him drowsy and unable to operate equipment or machinery or to drive. As a result of not being able to work, he suffered from depres-

sion and insomnia and was distraught with worry. (R. at 57.)

Pinnt's application was denied, (R. at 34–36), as was his request for reconsideration, (R. at 37–40). He requested a hearing before an ALJ. (R. at 41–42.) At the hearing, the ALJ took testimony from Pinnt, who was unrepresented, and from a vocational expert, Valerie Lipow. (R. at 179–240.)

## II. *ALJ's Decision.*

The ALJ analyzed the evidence of record and followed the sequential steps for evaluating disability outlined in Social Security Regulation 404.1520(a), 20 C.F.R. § 404.1520(a) (1997). He found between September 1990 and February 19, 1993, Pinnt suffered from a severe back disorder and an affective disorder but did not have an impairment that either met or equalled any found in the Listing of Impairments. (R. at 23, Finding 3.) During this period Pinnt did not have the residual functional capacity to return to his past relevant work as a boilermaker. (R. at 23, Finding 4.) His residual functional capacity

was limited to lifting or carrying ten pounds frequently and twenty pounds occasionally; sitting, standing, and walking for up to six hours each during an eight hour day; occasionally stooping, crouching, bending; avoiding cold, climbing, unprotected heights and hazardous machinery; and avoiding frequent interaction with the public or performing more than simple and repetitive tasks. Thus, the claimant had the capacity to perform a range of light and sedentary work activities.[2]

(R. at 23, Finding 5.) Beginning September 1, 1990, Pinnt retained the residual functional capacity to perform jobs that exist in significant numbers in the national economy, including clerical worker, production line solderer, and small and large products assembler. (R. at 23, Finding 7.)

Based on Pinnt's residual functional capacity, age, education and work experience, the relevant regulatory framework of Rule 202.1 of Appendix 2, and the vocational expert

**2.** "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools .... Light work involves lifting no

more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(a), (b) (1997).

evidence, Pinnt was not disabled at any time after September 1, 1990. (R. at 24, Findings 8, 9.) He was therefore not entitled to a period of disability and disability insurance benefits following the period of disability previously granted. (R. at 24, at 24.)

The Appeals Council considered, *inter alia*, contentions raised in a letter from Pinnt's attorney, but declined to review the ALJ's determination making it the Commissioner's final decision. (R. at 4–5.) *See* 20 C.F.R. § 404.981 (1997).

### III. *Standard of Review.*

■ I review the Commissioner's decision to determine whether her factual findings are supported by substantial evidence in the record as a whole and whether she applied the correct legal standards.[3] *See Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir.1994). Substantial evidence is that which a reasonable person would accept as adequate to support that determination. *Hamilton v. Secretary of Health and Human Servs.*, 961 F.2d 1495, 1498 (10th Cir.1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.1992). "A substantial evidence test for review does not permit a simple search of the record for isolated bits of evidence which supports a preconceived conclusion." *Pettyjohn v. Sullivan*, 776 F.Supp. 1482, 1486 (D.Colo.1991); *see also Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1577 (10th Cir.1994). The record as a whole is considered. *Pettyjohn*, 776 F.Supp. at 1485–86. The failure to apply the correct legal standard or to provide the court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal. *Nielson v. Sullivan*, 992 F.2d 1118, 1119–20 (10th Cir.1993). I examine the record meticulously in its entirety but may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *See Musgrave*, 966 F.2d at 1374.

### IV. *Merits.*

■ The Commissioner has established a five-step evaluation process under the Social Security Act for determining whether a claimant is disabled within the meaning of the act. *See Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir.1988) (describing the five steps in detail). The claimant bears the burden of proof through step four of the analysis. *Nielson v. Sullivan*, 992 F.2d at 1120. Once the Commissioner has determined at step four that the claimant cannot perform his past relevant work, the claimant has established a prima facie case of disability. *Id.* At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account his residual functional capacity, age, education and work experience. *Id.*

■ Here, the ALJ reached the fifth step of the analysis. (R. at 23, Finding 4.) Thus, the Commissioner bore the burden of proof to show that, beginning September 1, 1990, Pinnt could perform a significant number of jobs in the national economy. (R. at 23, Finding 7.) To meet this burden, the ALJ's decision must be supported by substantial evidence in the record. *Nielson*, 992 F.2d at 1121. My review of the record as a whole convinces me that the Commissioner did not meet her burden because the ALJ's determination regarding Pinnt's residual functional capacity is not supported by substantial evidence in the record.

The ALJ asked the vocational expert various hypothetical questions. He inquired whether there would be occupations in the national economy which an individual could perform, assuming he was Pinnt's age with his education and work experience, was limited to lifting/carrying ten pounds frequently and twenty pounds occasionally, could sit, stand or walk for six hours during each working day, could do no more than occasionally bend, stoop or squat, should avoid overhead reaching and also should avoid unprotected heights, hazardous machinery and cold

---

3. Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103–296, 108 Stat. 1464 (1994), the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995.

temperatures, and as a result of emotional and mental impairments, should avoid frequent interaction with the public and was limited to simple or repetitive, routine tasks and was unable to carry out or understand complex or detailed tasks. (R. at 222–24). The vocational expert responded such individual could not perform any of Pinnt's past occupations, but that there were other occupations in significant numbers in the national economy which such individual could perform "in production line soldering ... simple repetitive welds, spot welding," (R. at 225), and "in small parts assembly as well. as' large," (R. at 226). It was the answer to this hypothetical on which the ALJ relied in finding that Pinnt "retained the residual functional capacity beginning September 1, 1990 to perform jobs that exist in significant numbers in the national economy including clerical worker, production line solderer, and small and large products assembler." (R. at 23, Findings 5, 6, and 7.)

When the ALJ changed the hypothetical question only in the respect that rather than being able to sit, stand and walk for six hours in a day such individual "would have the capacity to stand for 30 to 60 minutes at a time, to sit for up to 60 minutes at a time, to walk anywhere between 20 and 60 minutes at a time," (R. at 226), the vocational expert opined that such individual could not perform any of Pinnt's past jobs and that there were no other occupations in the national economy which such individual could perform, (R. at 228). She explained:

> Because of the combination of the exertional restrictions and to change positions every 30 to 60 minutes between standing, walking and sitting, as well as the impaired ability to interact with people and to carry out—or understand and carry out complex instructions would essentially restrict such an individual to working in a specially modified work environment or a sheltered work environment.

(R. at 228.)

In summary, the vocational expert's opinion was if Pinnt could sit, stand and walk for six hours of each day, he retained the residual functional capacity to perform jobs that exist in significant numbers in the national economy, whereas if he could only stand for 30 to 60 minutes at a time, sit for up to 60

minutes at time, and walk anywhere between 20 and 60 minutes at a time, he did not retain such capacity.

When Pinnt posed a further hypothetical, based on the ALJ's first hypothetical (which included an ability to sit, stand or walk for six hours) but providing for additional limitations related to the side effects of his pain medication, the vocational expert again opined a significant number of jobs would not exist for such individual. She stated:

> And [sic] individual who would be not alert, due to drowsiness and sleepiness, and the distraction and irritation of stinging or burning or itching eyes would not be able to concentrate on performing the jobs to the standards of production or other standards of the performance or service that employers would require for safe and effective employment.

(R. at 230.)

Pinnt posed a final hypothetical as to what type of occupation a person with a similar background and experience to his would be able to perform if he needed to take extended rests lying on his back with his legs elevated. (R. at 235–36.) The vocational expert again responded that such individual would be incapable of performing any substantial activity in the work force. (R. at 236.)

Pinnt testified until late 1992 he could not sit or stand more than thirty to sixty minutes at a time as his lower back would spasm or he would have pains in his leg. (R. at 213–14.) In order to relieve the spasm, he would lie on his back with his knees elevated for an hour or two each day. (R. at 214.) In December 1992, he could stand for up to two hours and sit for about sixty minutes (R. at 214–15.) He could walk for only twenty minutes at a time until late 1992 when this increased to an hour, (R. at 214). He gradually progressed in his ability to lift and by December 1992 was able to lift about fifty pounds. (R. at 214.)

The ALJ did not expressly reject this testimony, finding Pinnt to be "sincere and forthright," (R. at 20), and emphasizing "the claimant's sincerity in his testimony," (R. at

22). The ALJ nevertheless found there were "certain inconsistencies" which led him to conclude that Pinnt retained the residual functional capacity for other work during the pertinent period. (R. at 20.) According to the ALJ, he "would find it quite unusual for an individual to go from being totally disabled to suddenly regaining the capacity to perform heavy or very heavy work as the claimant has performed since February 1993." (R. at 20.)

This pivotal finding that Pinnt unqualifiedly resumed performing heavy or very heavy work in February 1993 is unsupported by substantial evidence. To the contrary, the record shows when Pinnt returned to work as a boilermaker on February 19, 1993, his job activities were not the same as those before the accident, he limited himself to very light work without lifting, worked only 68 days in 1993, and needed physical therapy after each job he completed in 1993 in order to continue work. (R. at 45, 57, 206.)

The ALJ relied on Pinnt's testimony that between September 1990 and February 1991 he attended school for six hours a day to become a construction estimator as an indication that, with regard to sitting and concentrating, Pinnt regained the capacity for other types of work. (R. at 20.) He drew this conclusion without any evidence regarding the nature of the training, Pinnt's course work or his performance therein. Notably, the Code of Federal Regulations provides: "Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity." 20 C.F.R. § 404.1572(c), § 416.972(c) (1997).

The ALJ also found "the treating source reports reveal that after the claimant completed his classes as construction estimator, he looked for work in this field, activity inconsistent with one who perceives themself [sic] to be disabled." (R. at 21.) Here, the ALJ relied on isolated bits of evidence, without regard for Pinnt's testimony and Dr. Riopelle's notation that, although Pinnt looked for work following his classes to become a construction estimator, "most of the jobs also required the estimator to do physical tasks that were beyond him." (R. at 93.) It is inappropriate to penalize Pinnt for en-

gaging in a course of study and looking for jobs which ultimately he discovered he was incapable of performing.

The ALJ cited no other evidence in support of his conclusion that Pinnt could sit, stand or walk for six hours a day and ignored medical records which support Pinnt's testimony. On September 18, 1991, the physical therapy records reflect "[p]rolonged sitting (greater than 1/2 hours [sic]), and stooping increases pain," (R. at 140); on October 11, 1991, "he continues to complain of severe pain in the low back ..... he continues to have difficulty with sit to standing ....." (R. at 139); on October 31, 1991, "mobility is improved, but remains restricted into flexion on the right hip" (R. at 138); on April 1, 1992, "continues to report low back pain" (R. at 138); on April 29, 1992 "continues to report low back pain" (R. at 137).

The ALJ also made no reference to the May 4, 1993 physical therapy re-evaluation (after Pinnt had returned to work), noting that Pinnt reported "in addition to his usual back pain posterior leg pain and numbness in the right arm," (R. at 134), and that the plan was that Pinnt should be seen "two or three times per week for one month for above," (R. at 135). Similarly the ALJ ignored the records of Pinnt's treating physicians reflect that in April and May, 1993 (after Pinnt's return to work), he continued to have "chronic pain and tight hamstrings" and his continued functioning at work was dependent on "physical therapy and conditioning to control his chronic low back pain." (R. at 111.) This evidence is inconsistent with the ALJ's finding that when Pinnt returned to work in February 1993, he regained the unqualified ability to perform heavy or very heavy work. (R. at 20).

The ALJ noted the treating physician's opinion in June 1993 that Pinnt was disabled until February 1993, (R. at 109), and acknowledged that this opinion "must be accorded significant weight." (R. at 21.) He surmised nevertheless that the treating physician considered Pinnt disabled only in the sense of being unable to perform his past relevant work as a boilermaker. (R. at 21.)

The ALJ also ignored the opinion of George Truombly, Jr., M.D. who completed

the "Residual Functional Capacity Assessment" on February 11, 1994 and found Pinnt's complaints concerning his disabling back problem for the period September 1990 through February 1993, the severity of his symptoms, and the alleged effect on function was consistent with the total medical and nonmedical evidence. (R. at 78–85.)

■ I conclude the ALJ's decision rests on isolated bits of evidence in support of a preconceived conclusion concerning Pinnt's residual functional capacity during the operative period. Although the ALJ is entitled to draw reasonable inferences, his presumptions, speculations and suppositions should not be substituted for evidence. *See* Soc. Sec. Rep. Serv., Rulings 1983–1991, 432 (West 1992).

Viewing the record as a whole convinces me that during the relevant period, Pinnt's ability to sit, stand and walk was limited in the manner to which he testified. Based on such limitation, the vocational expert concluded a claimant of Pinnt's age, education and training would not be able to perform jobs existing in significant numbers in the national economy.

### V. *Conclusion.*

■ I conclude the Commissioner has not met the burden of showing that Pinnt retained the residual functional capacity beginning September 1, 1990 to perform jobs existent in significant numbers in the national economy. In reversing the Commissioner's determination, I retain the discretion to remand to the Commissioner for a further hearing or to award benefits to the claimant. *Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir.1993). Where a claimant has established a prima facie case of entitlement, the record is fully developed and the Commissioner has failed to show good cause for failure to adduce relevant evidence, there is no reason to remand. *See Id.* I find this to be the case. Accordingly,

IT IS ORDERED THAT David T. Pinnt is awarded disability benefits for the period September 1, 1990 through February 19, 1993.