**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 30 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

PAT E. DURRETT,

    Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,[*]

    Defendant-Appellee.

No. 97-6212
(D.C. No. 95-CV-613)
(W.D. Okla.)

ORDER AND JUDGMENT[**]

Before **ANDERSON**, **McKAY**, and **LUCERO**, Circuit Judges.

---

[*]    Pursuant to Fed. R. App. P. 43(c), Kenneth S. Apfel is substituted for Shirley S. Chater, former Commissioner of Social Security, as the defendant in this action. Although Mr. Apfel, the current Commissioner of Social Security, is the proper defendant in this action, in the text we refer to the Secretary of Health and Human Services because she was the appropriate party at the time of the underlying administrative decision.

[**]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Claimant Pat E. Durrett appeals from the district court's order affirming the decision of the Secretary of Health and Human Services to deny her application for social security disability benefits. We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and we affirm.

Claimant filed her application for disability benefits in early 1989, claiming disability as of May 23, 1988, as a result of cancer of the larynx and related complications, including the surgical removal of her larynx (including vocal cords) on October 27, 1988. In what became the Secretary's final agency decision,[1] an administrative law judge (ALJ) concluded at step five of the sequential evaluation process, see 20 C.F.R. § 404.1520; Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988), that claimant could still perform a limited range of light work and, therefore, was not disabled. Our job on appeal is to "closely examine the record as a whole to determine whether the Secretary's

---

[1] Claimant sought court review of the agency's first final decision in this case in 1991. In the district court, the Secretary apparently requested a remand for the purpose of evaluating claimant's mental impairments, and the court complied. The decision from which claimant now appeals is the Secretary's denial of benefits upon remand.

decision is supported by substantial evidence and adheres to applicable legal standards." Evans v. Chater, 55 F.3d 530, 531 (10th Cir. 1995).

A person is disabled within the meaning of the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also 20 C.F.R. § 404.1505(a). The burden to prove disability in a social security case is on the claimant. See Hill v. Sullivan, 924 F.2d 972, 974 (10th Cir. 1991). In this case, because claimant's insured status expired December 31, 1988, she must show that, as of that date, she had a disability that had lasted or was expected to last at least twelve months. See Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993); 20 C.F.R. §§ 404.320(b)(2), 404.1509.

The Secretary has established a five step sequential process for evaluating disability claims. See Williams, 844 F.2d at 750. On appeal, claimant challenges the ALJ's determinations at steps three and five of that process. She argues first that the ALJ erred at step three in concluding that she did not meet the listing for disability due to an organic loss of speech. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.09. At step five, she contends that the ALJ (1) improperly discounted her allegations of incontinence, shoulder pain, fatigue, and inability to withstand

stress, (2) improperly found she had transferrable skills of greeting and communicating with the public, and (3) improperly considered her mental impairment.

Step three involves a determination as to whether claimant's impairment "is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." Williams, 844 F.2d at 751 (quotation omitted). The determination of medical equivalency is based solely on medical evidence. See 20 C.F.R. § 404.1526(b). The Secretary "compare[s] the symptoms, signs, and laboratory findings about [a claimant's] impairment(s), as shown in the medical evidence [associated with the claim], with the medical criteria shown with the listed impairment." Id. at § 404.1526(a). Claimant has the burden of establishing disability at step three. See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

Claimant contends that the ALJ erred in concluding that she did not meet § 2.09 of the listings. Listing 2.09 requires an "*[o]rganic loss of speech* due to any cause with [an] inability to produce by any means speech which can be heard, understood, and sustained." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.09. The introductory section related to this listing acknowledges that a laryngectomy "results in loss of voice production by normal means," but further explains that "[i]n evaluating organic loss of speech (see 2.09), ability to produce speech by

-4-

any means includes the use of mechanical or electronic devices." Id. at § 2.00.B.3. Social Security Ruling 82-57 also elaborates as to how loss of speech is to be evaluated:

> To speak effectively, an individual must be able to produce speech that can be heard, understood, and sustained well enough to permit useful communication in social and vocational settings. These criteria are applicable to the production of speech whether by natural function of the voice mechanism or by the use of a prosthetic device.
>
> Three attributes of speech pertinent to the evaluation of speech proficiency are: (1) audibility--the ability to speak at a level sufficient to be heard; (2)intelligibility--the ability to articulate and to link the phonetic units of speech with sufficient accuracy to be understood; and (3) functional efficiency--the ability to produce and sustain a serviceably fast rate of speech output over a useful period of time. When at least one of these attributes is missing, overall speech function is not considered effective.

1982 WL 31382, at *1.

The medical evidence presented by claimant in support of her claim reveals that her laryngectomy on October 27, 1988, clearly resulted in the loss of her ability to produce speech by normal means. It indicates, however, that within weeks of her surgery, she was using a Cooper-Rand electrolarynx to produce speech, see Appellant's App. at 138, 139, 147, and there is no suggestion in the medical evidence that the speech so produced could not be heard, understood or sustained. Just five weeks after the surgery, on December 1, 1988, claimant's speech therapist reported that claimant was making "good progress" with her "Cooper-Rand speech" and characterized her as "95% intelligible." Appellant's

App. at 147. The medical records reflect that claimant continued with speech therapy through at least March of 1989,[2] working primarily on her esophageal speech, and, although the therapist recorded observations concerning claimant's limited ability to sustain esophageal speech, see id. at 151, there is no such notation with regard to claimant's Cooper-Rand speech. The therapist's notes indicate continuing improvement over the course of the therapy, and indeed the final notation reiterates "[r]ehab. potential continues to be excellent." Id.

We further note that none of the doctors who saw claimant after her surgery[3] made any reference in their notes to any difficulty in communicating with her. On the contrary, her otolaryngologist, Dr. Carl Hook, noted on April 6, 1996, claimant's "improving speech," id. at 176, and one of the psychiatrists who performed an evaluation upon remand specifically noted that "[i]t was not difficult to hear [claimant]." Id. at 254. Finally, the medical expert who testified at claimant's second administrative hearing opined, after reviewing and accurately

---

[2]     It is unclear from the record precisely how long claimant's speech therapy continued. Claimant testified at her first administrative hearing that she stopped going in March of 1989, see Appellant's App. at 38-39, and the record includes progress notes from the speech therapist only through that period, see id. at 147-51. But Dr. Hook's office notes on May 30, 1989, indicate that he saw claimant that day and that she had been "sent over by Sp. Therapist." Id. at 178.

[3]     The record indicates that Dr. Carl Hook, claimant's otolaryngologist and surgeon, saw her very frequently in the six months following the surgery. Dr. James Colvert, her internist, also saw her regularly. In addition, she was hospitalized on two occasions, and the admitting physicians did not indicate any difficulty in communication.

-6-

summarizing her medical records, that claimant did not meet listing 2.09. Accordingly, we conclude that there is substantial evidence to support the ALJ's step three determination.

We also reject claimant's contention that the ALJ was obligated in this case to order a consultative examination to assess speech proficiency. Social Security Ruling 82-57 does not require "a refined assessment of speech proficiency" in every case where there is an organic loss of speech, but instead simply sets forth what should be included if such an assessment is "necessary." 1982 WL 31382, at *1-*2. In connection with consultative examinations, we have explained that

> the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development. In the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record.

Hawkins v. Chater, 113 F.3d 1162, 1167-68 (10th Cir. 1997) (citation omitted). Here, as set forth above, there was nothing in the medical evidence to suggest that, with her electrolarynx, plaintiff was unable to produce speech that could be heard, understood and sustained. Furthermore, claimant testified at both her first and second hearing, producing over thirty-six pages of testimony, and there is no indication in the transcripts of those hearings that anyone present had any

difficulty hearing or understanding her.[4]  We cannot say, on this record, that the

ALJ was obliged to order a consultative examination on the issue of speech

efficacy.

Claimant also challenges the ALJ's determination at step-five that she

retains the capacity to perform a variety of light jobs that exist in the national

economy.  We have carefully reviewed each of claimant's arguments, and

conclude that they are without merit for substantially the reasons given in the

report and recommendation of the magistrate judge.[5]  We note that in her brief,

claimant raises two issues that the magistrate judge does not address in what

---

[4]    In her brief, claimant cites to the large number of "INAUDIBLE" notations
in the transcripts as a conclusive demonstration that claimant cannot produce
speech that can be heard, understood, and sustained.  We agree with the district
court that "these 'inaudible' references are merely evidence of the inability of a
transcriptionist to understand parts of Plaintiff's testimony from a tape
recording."  Appellant's App. at 348.  There is no indication that those present at
the hearing were unable to hear or understand claimant's testimony.

[5]    There is one point with respect to claimant's alleged shoulder pain that is
not covered in the magistrate judge's report, and that is claimant's challenge to
the ALJ's characterization of her shoulder pain as "secondary to the creation of
[her] stoma."  Appellant's App. at 201.  We note that elsewhere in the opinion,
the ALJ specifically noted that claimant had (in addition to her laryngectomy) a
"modified right neck dissection," id., which was described by the medical expert
at the hearing as the "removal of a large amount of tissues and muscles from the
right side of the neck," id. at 230.  We do not think the disputed characterization
can be said to reflect a significant misunderstanding concerning claimant's
complaint of shoulder pain.

appears to be an otherwise comprehensive report.[6] Thus, in the absence of any indication from claimant to the contrary, see generally 10th Cir. R. 28.2.(b) (requirement that brief include a statement as to where each issue appealed was raised and ruled upon below), we can only assume these issues were not raised in the district court[7] and thus are not entitled to our consideration, see Crow v. Shalala, 40 F.3d 323, 324 (10th Cir. 1994).

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge

---

[6] Claimant argues that (1) the ALJ failed to consider the combined impact of her impairments, and (2) the ALJ made the "unsupported assumption" that her transferable skills include greeting and communicating with the public.

[7] The Commissioner asserts in his brief that claimant did not raise the first of these issues in district court.