**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 27 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

GILBERT J. BOWMAN,

        Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner
of Social Security, Department of
Health and Human Services,

        Defendant-Appellee.

No. 99-1411
(D.C. No. 98-M-1290)
(D. Colo.)

---

**ORDER AND JUDGMENT**   *

---

Before **KELLY** , **McKAY** , and **HENRY** , Circuit Judges.

---

      After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

    *     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff applied for social security disability benefits on June 30, 1994, seeking benefits from the date he stopped working, November 3, 1993. The Commissioner denied benefits, initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), who denied plaintiff's application for benefits at step five of the sequential disability determination process. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). The ALJ found that, although plaintiff's severe impairments prevented him from performing his past relevant work, plaintiff retained the residual functional capacity to perform unskilled light and sedentary work, with certain limitations, and that such work was available in significant numbers in the national economy. The Appeals Council denied review.

Plaintiff sought judicial review of the Commissioner's denial of benefits for the closed period from November 3, 1993, through September 4, 1996, and the district court affirmed. On appeal, we review the Commissioner's decision to determine if it is supported by substantial evidence in the record and whether the correct legal standards were applied. *See Kepler v. Chater*, 68 F.3d 387, 388 (10th Cir. 1995). Guided by these standards, we reverse and remand for an award of benefits.

At the outset, we note that plaintiff filed a second application for disability benefits. A second ALJ awarded plaintiff benefits, finding disability as of

September 5, 1996. Consequently, plaintiff seeks judicial review of the Commissioner's denial of benefits only for the closed period of November 3, 1993, through September 4, 1996. *See* Appellant's Br. at 1.

Plaintiff's allegation of disability stems from a construction accident. The record indicates that he was struck on the head by a seventy-pound dirt clod, after which he suffered persistent neck pain that radiated into the scapular region. In January 1994, plaintiff underwent an anterior diskectomy and fusion at C6-7. After the surgery, plaintiff saw numerous doctors, and the record is replete with medical records concerning his physical condition and possible mental impairments resulting from the head injury. After careful review of the entire record, we conclude that the Commissioner's decision to deny benefits is flawed in several respects: the ALJ did not apply the correct legal standards in considering and analyzing the subjective and objective evidence of plaintiff's pain; the ALJ did not make findings as to the side-effects of plaintiff's medication and take that effect into account in his determination of plaintiff's residual functional capacity; the ALJ improperly rejected the treating physician's opinion; and the record reveals inconsistencies in the ALJ's decision. Given these errors, considering that plaintiff applied for benefits six years ago, and because we determine that "additional fact-finding would serve no useful purpose but would merely delay the receipt of benefits," we exercise our discretion to

remand for an immediate award of benefits. *Harris v. Secretary of Health & Human Servs.*, 821 F.2d 541, 545 (10th Cir. 1987); *see also Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993) (holding that it is within this court's discretion to remand for further proceedings or direct district court to award benefits, and noting application was filed over four years ago).

Although the ALJ recited the *Luna* standard for evaluating the subjective and objective evidence of plaintiff's pain, he did not specifically relate the evidence in this case to the required showings. There can be no debate that the medical evidence establishes that plaintiff suffers from a pain-producing impairment and that a loose nexus exists between the impairment and plaintiff's allegations of pain. *See Luna v. Bowen*, 834 F.2d 161, 164 (10th Cir. 1987). Indeed, the objective medical evidence establishes an affirmative link between plaintiff's consistent complaints of persistent pain and the head and neck injury. It is also apparent that plaintiff's subjective complaints of persistent pain were constant. He consistently described his ever-present pain to every medical professional he saw, as well as at the hearing before the ALJ. Indeed, the ALJ specifically found that plaintiff was sincere and credible. Despite the abundance of objective and subjective evidence of pain, the ALJ did not address plaintiff's pain in his residual functional capacity analysis and step-five findings. *See Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993) (holding that,

unless record contains substantial evidence that pain is insignificant, ALJ must take pain into account in conducting analysis as to plaintiff's residual functional capacity).

In addition to ignoring plaintiff's pain in his analysis and ultimate findings, the ALJ did not account for the physical side-effects of plaintiff's medications. The record shows that plaintiff takes medication that makes him groggy for a few hours in the morning (and less groggy if he takes it before bed). The ALJ found that the medical records established that plaintiff currently suffered *diminished* side-effects from his medication. The ALJ did not, however, detail what those *diminished* side-effects were, nor did he explore or account for any side-effects from medication, diminished or otherwise, in either his questioning of the vocational expert or his findings regarding available jobs given plaintiff's limitations. [1] After having found that plaintiff suffered diminished side-effects from his medication, the ALJ was obligated to either discount the side-effects as insignificant or nonexistent, or incorporate the side-effects into his analysis and residual functional capacity determination.

We also hold that the ALJ's rejection of treating physician Dr. Sternberg's opinion was error. "A treating physician's opinion must be given substantial

[1] One of the jobs the ALJ found plaintiff could perform given his limitations was machine operator. Presumably, one's ability to operate a machine would be affected by a sensory impairment resulting from medication.

weight unless good cause is shown to disregard it. When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physicians's report, not the other way around." *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1995) (citation and quotation omitted). Further, there are several specific factors the ALJ must consider, including:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 290. From our reading of the ALJ's decision, it appears that he considered only the fourth of these required factors in rejecting Dr. Sternberg's opinion.

The ALJ found that Dr. Sternberg's conclusions as to the severity of plaintiff's mental impairments were not supported by the examinations of other mental health professionals. We disagree. Dr. Nunley, who performed a neuropsychological examination and testing at Dr. Sternberg's request, may not have gone as far in his impressions and certainly termed them differently, but his report and impressions were not inconsistent with Dr. Sternberg's. Dr. Sternberg's

opinion and notes are also consistent with the independent medical examination report by Dr. Yarnell. The speech pathologist's cognitive language evaluation is also consistent with Dr. Sternberg's impressions, as is the report by Dr. Litvin, a rehabilitation expert.

The only doctor whose opinion can be said to conflict with Dr. Sternberg's assessment is Dr. Gevaert, an independent medical examiner who specializes in physical medicine and rehabilitation. Dr. Gevaert disagreed with Dr. Sternberg's diagnosis of brain injury after spending only a couple of hours with plaintiff. Dr. Gevaert did not take specific issue with the conclusions of Dr. Nunley, the neuropsychologist. He merely stated in a conclusory fashion that he did not believe any cognitive impairment was the result of organic brain injury, but was instead secondary to somatic symptoms. [2] Dr. Gevaert also relied heavily on the fact that plaintiff was attending junior college and receiving excellent grades to support his conclusion that plaintiff could perform the work in his field of study. This opinion did not account in any manner for the highly individualized and significantly less-demanding course of study afforded plaintiff on account of his physical and mental limitations.

---

[2] In fact, we are left with the impression after reading Dr. Gevaert's report, that he generally agreed with Dr. Sternberg's conclusion that plaintiff suffered a cognitive impairment. The disagreement seems to lie in the source of the impairment. Nevertheless, we assume for purposes of this opinion that Dr. Gevaert's opinion was in conflict with Dr. Sternberg's.

In sum, Dr. Sternberg's notes were neither brief nor conclusory, and his opinion was not inconsistent with the neuropsychologist's, Dr. Yarnell's, the speech pathologist's, or Dr. Litvin's. *See Frey v. Bowen*, 816 F.2d 508, 514-15 (10th Cir. 1987). Consequently, his opinion, as plaintiff's treating physician, should have been given substantial weight. The ALJ did not apply the correct legal standards in considering and assessing the treating physician's opinion. [3]

Finally, the ALJ was inconsistent in the weight he attributed to the college degree plaintiff received within the period of time relevant to this decision, and that inconsistency casts further doubt on his decision. The record shows that plaintiff received an associate's degree from a junior college in May 1996 and that his grades toward that degree were very good. The record also shows, however, that plaintiff's study program was highly individualized and significantly altered on account of his special mental and physical limitations, to the point of requiring almost no effort by plaintiff for receiving outstanding grades. The ALJ acknowledged plaintiff's testimony regarding the special treatment he received in school, and, in questioning the vocational expert, the ALJ asked the expert to consider an individual with only a high school education, thus implying that the

---

[3] We note that the ALJ also discounted Dr. Sternberg's opinion based on the ALJ's impression that Dr. Sternberg's opinion was on account of his sympathy for plaintiff. Dr. Sternberg's sympathy toward plaintiff is not good cause to reject his opinion as a treating physician. *See Frey*, 816 F.2d at 515.

college degrees were of questionable relevance. Despite these apparent concessions to the relevance of the education received during the period under review, the ALJ repeatedly referred to plaintiff's associate's degree and the good grades he received as bolstering his analysis and findings regarding plaintiff's residual functional capacity to work.

Because the ALJ did not apply the correct legal standards, we REVERSE and REMAND this case to the district court with instructions to remand to the Commissioner for an immediate award benefits for the period of November 3, 1993, through September 4, 1996.

Entered for the Court

Monroe G. McKay
Circuit Judge