**Virginia CRAWFORD, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

**No. Civ.A. 95–B–775.**

United States District Court, D. Colorado.

Feb. 23, 1998.

---

Chalk S. Mitchell, Asst. U.S. Atty.

Devon A. McFarland, The Law Office of Devon A. McFarland, Trinidad, CO.

Thomas H. Krause, Asst. Regional Counsel, Office of the General Counsel, Social Security Admin., Denver, CO.

### ORDER

BABCOCK, District Judge.

This case is before me on Magistrate Judge Patricia Coan's recommendation issued and served on February 3, 1998. No responses have been filed to the recommendation. Accordingly, the defendant is barred from a *de novo* determination of the proposed findings and recommendations. *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), 28 U.S.C. § 636(b)(1). The court now being sufficiently advised,

IT IS ORDERED that the recommendation is approved and the decision of the Commissioner is REVERSED and the case is REMANDED for consultative reports and a further hearing to determine Crawford's medical status prior to December 31, 1990 as it relates to her eligibility for benefits.

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

COAN, United States Magistrate Judge.

Feb. 3, 1998.

This matter is before the court on a May 12, 1997 special order of reference from District Judge Lewis T. Babcock. Plaintiff appeals the decision of the Secretary finding

her ineligible for benefits. Judicial review of the Secretary's decision is appropriate under 42 U.S.C. § 405(g). For the reasons discussed below, it is recommended that the decision of the Administrative Law Judge be reversed and the matter remanded for evaluation of claimant's medical condition prior to December 31, 1990.

## I. Background

■ Ms. Crawford ("claimant" or "Crawford") filed for disability benefits on November 3, 1992, claiming that she had been unable to work since July 1985 due to arthritis in the back, headaches, dizziness, shortness of breath and painful feet. Claimant was insured for disability benefits only through December 31, of 1990.[1] Administrative Record ("R.")[2] 161. A hearing was held before administrative law judge ("ALJ") Swihart on December 8, 1993. R. 157. At that hearing, Crawford testified that her date of birth was May 4, 1938 and that she had completed the sixth grade. R. 162. Crawford's previous work experience included housekeeping and working as a sterilization aide in a hospital. As an aide, she stood to work, and the heaviest instruments she was required to lift weighed twenty or thirty pounds. R. 163. Bundles of instruments weighed thirty-five to forty pounds. R. 164. Claimant also worked in a nursing home, which required working on her feet, helping patients with personal needs, making beds and lifting patients. R. 165. Claimant has worked in a laundry, as a motel housekeeper and as a cook. R. 174. The last time claimant worked or applied for work was in 1985. R. 165–66, She did try to work as a housekeeper in 1986 but quit after two weeks due to back pain. R. 179–80. Crawford testified that, before 1990, she tried to work cleaning house. R. 180–81. Claimant said she could not return to any of those jobs. R. 182.

From 1985 until 1988, Crawford stated she did not need to and did not consult any physicians. R. 168. In March, 1988, claimant went to Dr. McFarland, complaining of low back pain. R. 169. Claimant paid for Dr. McFarland herself. R. 184. From 1988 until her shoulder injury in 1992, claimant did not consult any physicians. *Id.* She said she could not afford to see any physicians. R. 170. Crawford injured her shoulder in October 1992 in a car accident and consulted Dr. Carlisle. Rec. 168. Her treatment with Drs. Biber and Carlisle for the shoulder injury was covered by insurance because it involved an automobile accident. R. 170–71. Between 1985 and 1990, Crawford's husband's social security disability was the family's means of support. R. 184. Crawford did not have any medical insurance. R. 185.

Crawford testified that she could not sit for very long in 1990. R. 172. As of the December 3, 1993 hearing date and before 1990, claimant had pain in her back and legs all the time. R. 176, 182–83. She also described pain in her knees. R. 183–84. Crawford said she injured her back in the early sixties when she was a cook, when she slipped and fell while carrying a box of potatoes. R. 177. At that time, Crawford was out of work about two months. *Id.* She wore a brace for a long time. R. 178. During the nineteen seventies and eighties, her back would hurt when she tried to walk and she would have pain down her legs. *Id.* She has taken some of her husband's medications for the pain. R. 185. From the late 1980's and up to 1990, claimant would "self-treat" herself, using a heating pad, pillows to elevate her legs, and cold packs. R. 186–87. Her daughter would help with the housework. R. 188. Crawford would rest between chores around the house, and needed someone else to do the chores that required bending. R. 188–89. In the afternoons, she would sit, but not for long, and watch TV in a recliner chair. R. 189. During the same time frame, Crawford said she had headaches twice a day, for which she would take Tylenol. R. 190. Because of the pain, Crawford had to limit walking, jogging, housecleaning, shop-

---

1. In order to be entitled to benefits, claimant is required to establish that she was disabled prior to December 31, 1990, the date her insured status expired under the Act. *Potter v. Secretary of Health & Human Services,* 905 F.2d 1346, 1347–48 (10th Cir.1990).

2. All references to the "Record" are to the Administrative Record.

ping, cooking (R. 75), and church attendance. R. 84.

Crawford's husband testified that Crawford's headaches are severe and that he gives her Tylenol. R. 192. Mr. Crawford stated that he and his wife sleep in separate beds because of the pillows Crawford needs to position her back. He further stated that she no longer walked a quarter mile with him in the evenings (*id;* R. 193), and that she has complained of pain in her lower back, between her shoulders and her feet since 1985. R. 194. Mr. Crawford shares his pain medications, including Proxican, ibuprofen, Motrin and blood pressure medication, with claimant, because they have no insurance and cannot afford to buy it. R. 85, 196. Her husband said Crawford has had bouts of depression since the middle 1980s. R. 197–98; see also R. 75, 80. Crawford's daughter, Tina Lankford, said she was first aware of her mother's back problems when Crawford worked as a nurse's aide in a nursing home. R. 201. In August 1990, Lankford moved in with her parents for a time and said her mother complained of back pain, which Lankford would try to alleviate by rubbing her back in the evenings. R. 201. At that time and afterwards, Lankford helped her mother with the housework, including vacuuming, sweeping, mopping, laundry and doing the dishes. R. 201–202. Lankford said Crawford's feet would swell, that her mother complained of pain in her feet and that she would have to recline in a chair to get the pressure off her feet. R. 202–203. Claimant spends about sixteen hours a day resting. R. 81. Her sleep is interrupted by pain. R. 82.

The ALJ's decision issued May 10, 1994. The ALJ found that the medical evidence established that claimant had a history of degenerative arthritis of the lumbosacral spine plus lower back strain, which was a severe impairment, but that "no impairment of Listing level severity is documented by the record prior to December 31, 1990." R. 30. The ALJ said he based his finding on Dr. McFarland's medical records which indicated no neurologic abnormality. R. 30. The ALJ found that it was obvious that claimant could not, during the date she was last insured for benefits, engage in heavy lifting or repetitive

bending, but she retained the ability to perform sedentary and light jobs (*id*), and that she did not have an impairment or combination of impairments severe enough to warrant a finding of disability based on medical considerations alone. R. 31. The ALJ found that claimant could not return to her prior jobs. *Id.* The ALJ then applied the grid to determine that, since she did not have an exertional impairment sufficient to conclude that she was disabled, claimant could perform a full range of light work. R. 31–32, 34. Crawford's complaints of pain were found to be not credible, because her complaints were not supported by the medical records in 1988 or there were no medical records in support of her claims of pain. R. 32. The ALJ found that the record as a whole did not indicate that Crawford's pain was severe enough to prevent her from performing sedentary and light work. R. 33.

The ALJ applied Rule 202.10 in Table No. 2, Appendix 2 of Subpart P. Regulations No. 4 ("the grid") and Regulation 404.1569 to find that, considering her age, education, vocational background and maximum sustained work capacity, claimant was not disabled. R. 34.

The ALJ considered claimant's complaints of pain but found them not disabling because there were no signs of muscle atrophy, muscle spasms or neurologic abnormality, claimant's lack of medical treatment and use of over-the-counter pain relievers were consistent with a finding that she is not bothered by severe disabling pain when restricted to sedentary or light activity, and that the physician who treated claimant for her shoulder injury in 1993 stated that she was capable of light work. R. 32–33.

Crawford filed her complaint April 7, 1995, seeking reversal of the Appeals Council decision of February 2, 1995, which affirmed the ALJ. The Appeals Council's decision was the final decision of the Secretary for purposes of judicial review under 42 U.S.C. § 405(g). *Fierro v. Bowen,* 798 F.2d 1351, 1354–55 (10th Cir.1986).

## II. Standard of Review

 Judicial review of the Commissioner's decision is limited to whether the Com-

missioner's decision is supported by substantial evidence upon review of the record as a whole and whether she applied the correct legal standards. *Andrade v. Secretary of Health and Human Services,* 985 F.2d 1045, 1047 (10th Cir.1993); *Castellano v. Secretary of Health and Human Services,* 26 F.3d 1027, 1028 (10th Cir.1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Broadbent v. Harris,* 698 F.2d 407, 414 (10th Cir.1983) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). In reviewing the Commissioner's decision, the court cannot reweigh the evidence or substitute its judgment for that of the Administrative Law Judge. *Hamilton v. Secretary of Health & Human Services,* 961 F.2d 1495, 1498 (10th Cir.1992). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if it is based on a mere scintilla of evidence, but the court will scrutinize evidence that constitutes mere conclusion. *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir.1988). The court must affirm the Commissioner's decision if it is based on substantial evidence. *Eggleston v. Bowen,* 851 F.2d 1244, 1246 (10th Cir.1988).

### III. Administrative Law Judge's Decision

The issue was whether Crawford was disabled and entitled to disability benefits and supplemental security income under the Social Security Act.

In *Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir.1988), the Commissioner established a five stop sequential process to determine if a claimant is disabled. *See also,* 20 C.F.R. § 404.1520. If the claimant is determined to be disabled or non-disabled at any step, the evaluation process ends there. The burden of proof is on the claimant through step four; and if the Commissioner finds that the claimant cannot perform her past relevant work, the claimant has established a prima facie case of disability. *Nielson v. Sullivan,* 992 F.2d 1118, 1120 (10th Cir.1993). The burden then shifts to the Commissioner to show that a claimant can perform work that exists in the national

economy, taking into account the claimant's residual functional capacity, age, education, and work experience. *Id.*

"Disability" is defined as the "the inability to perform substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(A) (1995); 20 C.F.R. §§ 404.1505 and 416.905 (1995).

Under this definition, a claimant must have a "severe impairment" which makes her unable to do her previous work or any other substantial gainful activity which exists in the national economy. *Id.* In determining whether a claimant is able to do any other work, her "residual functional capacity . . . age, education and work experience" are considered. *Id.*

The sequential process begins with a determination as to whether the claimant's work activity is substantial. 20 C.F.R. §§ 404.1520 and 416.920. Then, consideration is given to whether the claimant's impairments are "severe" and if so, whether she still maintains the "residual functional capacity" to perform other work, in light of her transferable skills, age, education, and work history. *Id.* If a determination can be made at any step that the claimant is or is not disabled, then further review is unnecessary. *Id.*

The ALJ found that Crawford was not working, did not have an impairment or combination of impairments under the grid and did not have severe disabling pain when limited to sedentary activity. The ALJ found that claimant was not under a "disability" as defined by the Social Security Act. The ALJ found that there were not any limitations which were non exertional, that Crawford had an unskilled work background, and could not perform her past relevant work.

**Assessment of Substantial Gainful Activity**

According to the regulations, "if you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled . . ." 20 C.F.R.

§§ 404.1520(b) and 416.920(b). Claimant completed six years of schooling. She has not worked for pay since her attempt to work for two weeks in 1986. Her former work required standing on her feet all day, bending to make beds, lifting as much as forty pounds, and lifting and caring for patients.

The ALJ concluded that Crawford had not engaged in any substantial work activity since 1988. He further found that claimant was unable to perform her past relevant work.

### Assessment of Impairment

The ALJ evaluated whether Crawford had any mental or physical impairments, which alone or in combination, would be considered "severe." He then determined whether Crawford's impairment significantly limited her mental or physical ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c). The ALJ found that Crawford had a history of degenerative arthritis of the lumbosacral spine plus lower back strain, which did not rise to the level of an impairment under the grid.

### Residual Functional Capacity

At this step in the analysis, the burden is on the claimant to prove he is unable to perform his past relevant work. *Andrade,* 985 F.2d at 1050. The ALJ determined whether Crawford was able to perform her past relevant work and found that she was not. R. 34. Since the claimant could not perform her past relevant work, the ALJ was required to determine whether Crawford could perform any jobs existing in significant numbers in the national economy which the claimant can perform given her limitations and vocational profile. The ALJ was to review the claimant's past work experience and the possible work available in the future given claimant's exertional restrictions and her non exertional complaints of pain.

Crawford testified she had been unable to work since the summer of 1985 and that she had tried to do housework and home care, but was unsuccessful. Vicky Zappanti said that, after several attempts, Crawford was able to work for her only about a hour because of the pain, while Zappanti "could have used her all day." R. 123.

In assessing Crawford's residual functional capacity, the ALJ considered the credibility of her testimony regarding the severity of pain emanating from her physical impairments. He said "There can be little doubt that the claimant does have a severe impairment and that she has had chronic discomfort primarily related to heavier types of exertion." R. 30. He said there was no evidence of muscle atrophy or numbness in the lower extremities and that claimant had only mild to moderate limitations of motion of the back and hips, Dr. McFarland's neurologic findings were negative, and there was no significant evidence of muscle spasm. R. 30. While the ALJ said that "it is obvious she could not engage in heavy lifting or repetitive bending as a result of her lower back strain and degenerative arthritis," Crawford did not have an impairment and retained the ability to perform sedentary and light jobs. *Id.*

### IV. Review

Crawford contends that the Secretary did not meet her burden of showing that Crawford was not disabled under the Social Security Act. Specifically, Crawford claims that the ALJ gave insufficient weight to and improperly credited, claimant's complaints of pain, as supported by the testimony of claimant's husband and daughter, that the ALJ improperly applied the grid without consideration of Crawford's non exertional complaints of pain, and that the ALJ failed to develop the record by ordering consultative reports.

Claimant contends the ALJ failed to give sufficient weight to her complaints of pain. Questions of evidentiary weight and witness credibility are within the province of the Commissioner, whose judgment on such matters is entitled to considerable deference. *See Gay v. Sullivan,* 986 F.2d 1336, 1339 (10th Cir.1993); *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir.1992). The ALJ is to consider complaints of pain once he has established by objective medical evidence that the claimant suffers from a pain-producing impairment, and there is a loose nexus between that impairment and the claimant's subjective allegations of pain. *Kepler v. Chater,* 68 F.3d 387, 390 (10th Cir.

1995), citing *Luna v. Bowen,* 834 F.2d 161, 164 (10th Cir.1987).[3]

While acknowledging claimant's herniated disc in 1969 and lumbar strain, the ALJ based his opinion that claimant's pain was not disabling on his conclusion that the medical records did not support claimant's complaints of pain, that she had failed to seek medical treatment for back and leg pain after 1988, that she took only non-prescription medications for pain, and that she was able to perform household duties. Rec. 32–33.

■ The ALJ's conclusion that claimant's pain was not disabling was not supported by substantial evidence in the record. The record before the ALJ concerning Crawford's complaints of back and foot pain was comprised of Crawford's testimony and that of her family members, an affidavit from a putative employer, a 1988 x-ray and 1988 medical records from Dr. McFarland.

All of the witnesses testified to Crawford's complaints of pain or to their opinions that Crawford was in pain. The 1988 x-ray report read "severe degenerative narrowing of the disc space at 5–1 is present with accompanying sclerosis of the apposing bony surfaces" in the lumbar spine and "hypertrophic lipping in the mid thoracic area" for the thoracic spine. R. 107. Due to a fall on her back at home in January 1988, claimant sought treatment from Dr. McFarland and reported pain and tenderness along her lumbosacral spine. R 109. During her March 8, 1988 visit to Dr. McFarland, she complained of continued low back pain off and on for about ten years. R. 108. There was evidence of an old herniated disc injury in 1969 which required claimant to be off from work about two months and to wear a brace thereafter and claimant's testimony that she aggravated her back while working as a nurse's aid. R. 108. Dr. McFarland suggested that the back pain was probably due to arthritis of the spine. R. 108. He mentioned muscle spasm in the lower back. R. 109. In light of the evidence in claimant's medical records,[4] and in accordance with 20 C.F.R. § 404.1529(c)(3),[5] there was not substantial evidence to support the ALJ's finding that there were not abnormal neurological findings and that claimant was capable of sedentary and light work because there was medical evidence of both exertional and non exertional impairments.

■ Further, an ALJ may not deny benefits based only on lack of objective medical evidence when it is evident that a claimant's ultimately disabling problems began prior to the expiration of his insured status. *Basinger v. Heckler,* 725 F.2d 1166 (8th Cir. 1984). When the ALJ relies on the claimant's failure to pursue treatment as support for his determination of noncredibility, he should consider whether the treatment would restore the claimant's ability to work; whether the treatment has been prescribed; whether the treatment was refused; and whether the refusal was without justifiable

---

3. Under *Luna v. Bowen,* 834 F.2d 161 (10th Cir.1987), all evidence presented relating to subjective complaints, including the claimant's work record and information and observations by treating and examining physicians and third parties is considered. Consideration is given to matters such as the nature, duration and frequency of pain, precipitating and aggravating factors, medication, treatment, functional restrictions and the claimant's daily activities. *Luna,* 834 F.2d at 166. The ALJ's analysis is to be consistent with *Luna* and also with *Hargis v. Sullivan,* 945 F.2d 1482 (10th Cir.1991), holding that the factors to consider when assessing credibility of complaints of pain are levels of medication and their effectiveness, the extensiveness of the attempts to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses and the consistency or compatibility of nonmedical testimony with objective medical evidence. *See, also, Talley v. Sullivan,* 908 F.2d 585, 587 (10th Cir.1990) (when determining whether a claimant's pain is disabling, the Commissioner is entitled to examine the medical record and evaluate the claimant's credibility).

4. There were also entries in the record referring to claimant's possible hypertension before December 31, 1990. R. 125, 133. The ALJ did not consider claimant's hypertension and the possibility that she had combined impairments of back and foot pain along with hypertension.

5. The regulation states that a claim about the intensity of pain and its effect on the ability to work will not be rejected "solely because the available objective medical evidence does not substantiate [the claimant's] statements."

excuse. *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir.1987) (internal citations omitted). Here, Crawford's undisputed testimony was that she and her husband lived on his social security benefits and that, as a result, she took her husband's medications and could not afford to see a doctor. Claimant's failure to seek medical treatment was justifiable under the circumstances. *See, Stonebraker v. Shalala*, 827 F.Supp. 1531, 1535–36 (D.Kan.1993) (ALJ's reliance on fact that claimant did not seek medical treatment when claimant could not find a doctor who would take his medical card insubstantial evidence for finding of noncredibility as to pain). In addition, the claimant's inability to purchase prescription medications also was due to her financial status. Further, the ALJ's reliance on claimant's ability to do some housework should not be considered when evaluating whether claimant's pain limits her ability to be substantially gainfully employed.[6] The ALJ incorrectly evaluated Crawford's complaints of pain in light of the medical records documenting back injuries in 1969, long standing degenerative disease, and another back injury in 1988. The records from 1988 provided an objective basis for claimant's pain, which was bolstered by the testimony of claimant, her husband and daughter and the affidavit of Vicky Zappanti.

■■■ The ALJ determined that Crawford was not disabled using the grid. Claimant objects to the use of the grid when non exertional complaints are present. Resort to the grids is appropriate only when a claimant's characteristics exactly fit a listing in the grids. *Gossett v. Bowen*, 862 F.2d 802, 806 (10th Cir.1988). Where significant non-exertional impairments exist, such as back pain, the ALJ should not apply the grids conclusively. Instead, they should only serve as a framework to determine whether sufficient jobs remain within a claimant's range of residual functional capacity. *Hargis*, 945 F.2d

at 1490. Since the grids take into account only exertional or strength impairments and do not consider non exertional impairments such as pain, they cannot be used when a non exertional impairment limits a claimant's ability to perform a full range of work in a particular residual functional capacity. *Id.*

■■■ There was insubstantial evidence to support the ALJ's finding that claimant was capable of sedentary work or light work when there was evidence of claimant's exertional and non exertional impairments and no evaluation of the extent of claimant's vocational impairments as they relate to substantial gainful employment in the national and local economy.[7] Accordingly, application of the grid to support a finding that claimant was not disabled was not supported by the record.

Crawford contends that the ALJ had a duty to develop the record by ordering consultative examinations because claimant could not afford to pay for an examination, and that therefore, there was insufficient medical evidence in the record to deny benefits.

■■■ The claimant has the burden to make sure there is in the record evidence sufficient to establish a reasonable probability that a severe impairment exists. Once the claimant has met that burden, it is then the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment. *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir.1997). This is consistent with the ALJ's basic duty of inquiry to fully and fairly develop the record as to material issues. 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 404.944; *Jordan v. Heckler*, 835 F.2d 1314, 1315 (10th Cir.1987); *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir.1987).

---

6. *See,* 20 C.F.R. § 404.1572, which states "Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs to be substantial gainful activity."

7. The ALJ relied, in part, on the affidavit of Dr. Carlisle, who treated claimant for a shoulder injury in 1992. Although Dr. Carlisle did state in

his affidavit that he released Crawford for light work with the restriction of no lifting above the shoulder, he also stated that "because of her insurance restrictions, I am unable to comment concerning her other health issues, which include her hypertension, her back pain and arthritic problems." R. 133.

Here, the ALJ did not have substantial evidence to deny claimant benefits when he, as part of his analysis, denied benefits because claimant had not sought medical treatment between 1988 and the end of 1990, when the record supported her justifiable excuse that she could not afford to pay for medical treatment, and when the medical record for 1988 substantiated claimant's history of a back injury in 1969 and another in 1988. *See, Tucker v. Sullivan,* 779 F.Supp. 1290 (D.Kan.1991) (lack of contemporaneous medical treatment, without more, does not amount to substantial medical evidence that disabling condition does not exist). Instead, the ALJ had a duty to gather medical records from the twelve months prior to Crawford's claim for benefits and in this case, the duty to obtain a medical opinion concerning her complaints in order to fully inform himself prior to making his decision. *See,* 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. §§ 404.1512(d) and 416.912(d).

### V. Recommendation

The court has discretion to remand to the Commissioner for a further hearing or to award benefits to the claimant. *Dixon,* 811 F.2d at 511. Accordingly, for the reasons set forth above, it is recommended that the decision of the Commissioner be reversed and the case remanded for consultative reports and a further hearing to determine Crawford's medical status prior to December 31, 1990 as it relates to her eligibility for benefits.

**Within ten days after being served with a copy of the recommendation, any party may serve and file written objections to the recommendation as provided by rules of court. The district court judge shall make a de novo determination of those portions of the recommendation to which objection is made. The district court judge may accept, reject, or modify, in whole or in part, the recommendations made by the magistrate judge. The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.**