**William F. DONAHUE, Petitioner,**

v.

**Larry G. MASSANARI, Commissioner of Social Security, Respondent.**

No. 00–73268.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 19, 2001.

Kenneth F. Laritz, Clinton Township, MI, for petitioner.

Geneva S. Halliday, United States Attorney's Office, Detroit, MI, for respondent.

***ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [18–1], GRANTING DONAHUE'S MOTION FOR SUMMARY JUDGMENT [11–1] AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [15–1]***

TARNOW, District Judge.

The Court has reviewed the file, Plaintiff Donahue's Motion for Summary Judgment, Defendant Commissioner's Motion for Summary Judgment, and the Magistrate Judge's Report and Recommendation. Objections to the Magistrate's Report and Recommendation were not filed.

The Report and Recommendation of the Magistrate Judge [18–1] IS HEREBY ACCEPTED and is entered as the findings and conclusions of the Court.

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [11–1] is GRANTED

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment [15–1] is DENIED.

IT IS ORDERED THAT this case is remanded for an award of benefits in Plaintiff's favor.

## REPORT AND RECOMMENDATION

PEPE, United States Magistrate Judge.

Plaintiff William Donahue has brought this action under 42 U.S.C. § 405(g) to challenge a final decision of defendant Commissioner denying his application for Social Security disability insurance benefits. Both parties have filed summary judgment motions which have been referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

### I. PROCEDURAL HISTORY

Plaintiff applied for disability benefits on June 23, 1994, claiming disability as of May 1, 1991, due to lower back pain from a bulging disc, as well as pain and numbness in the left leg and foot (Tr. 24, 29). His application was denied initially and on reconsideration. On June 3, 1996, an administrative hearing was conducted by Administrative Law Judge ("ALJ") William D. Boham, where Plaintiff testified accompanied by an attorney (Tr. 185). Michael Kimbrell, a vocational expert ("VE"), also testified (Tr. 201). On June 21, 1996, Judge Boham issued his decision finding Plaintiff not disabled (Tr. 16). The Appeals Council denied review on November 19, 1997 (Tr. 3–4). The matter was reviewed by this Court and a December 30, 1998, Report and Recommendation was adopted as this Court's decision, reversing the findings of the Commissioner as not supported by substantial evidence and re-

manding for further administrative proceedings consistent with the Report and Recommendation.

On January 28, 2000, Plaintiff appeared with counsel before ALJ Michael F. Wilenkin (Tr. 274–89). Although ALJ Wilenkin erroneously states in his decision that Plaintiff declined to appear at the remand hearing (Tr. 227), the hearing transcript indicates that Plaintiff was present at the hearing and available if Judge Wilenkin had any questions of him, but chose not to put on any additional testimony.[1] In a decision of March 1, 2000, ALJ Wilenkin found Plaintiff not disabled (Tr.226–32). In doing so, ALJ Wilenkin relied upon a hypothetical question to a vocational expert that assumed that the worker could "stand six of eight hours" (Tr. 282). No additional evidence on this issue was developed upon remand. In an extensive memorandum of January 14, 2000, Plaintiff's counsel called to the Appeals Council's attention that based on the medical record previously before the Court, "[t]he Magistrate Judge also noted that there was no evidence that would demonstrate a capacity of the plaintiff to stand or walk 6 of 8 hours." (Tr. 213–14 referring to Tr. 250). The Appeals Council nonetheless denied review on March 16, 2000, based on a factual contention which this Court had earlier stated was not supported by the evidence. (Tr. 207–11)

## II. RECOMMENDATION

Because there again is not substantial evidence in the record to uphold the Commissioner's renewed finding of "not disabled," the Commissioner's determination should be reversed and the case remanded for an award of benefits.

## III. BACKGROUND FACTS AND MEDICAL EVIDENCE

Plaintiff was born December 5, 1943, and was fifty-two years of age at time of the ALJ's June 3, 1996, decision. Plaintiff has a tenth grade education and four years of training as a carpenter (Tr. 53, 197). Plaintiff worked from April 1964 to May 1, 1991, doing heavy construction carpentry (Tr. 53–54). He injured his back lifting while at work and received a Worker's Compensation award (Tr. 195–96).

The prior record and Report note that in the spring of 1991, Plaintiff undertook a physical therapy program at Heritage Hospital that was not successful. He began to see a physical medicine and rehabilitation specialist, Dr. Joe Weiss, M.D. A CT exam revealed a bulging disc at L4–5 with radiation into the left hip and leg and some left lower extremity numbness (Tr. 156). A second course of physical therapy from July to September 1991 resulted in episodic improvement. From October 1 until December 13, 1991, he was placed in a work hardening program with nearly daily involvement (Tr. 108–09). Plaintiff was noted to be motivated, and was working four hours and lifting ten pounds, with minimum pain, by mid-November 1991. The program goal for that period was five full days of work with lifting of fifty pounds (Tr. 112). In early December, Plaintiff was lifting fifteen pounds, but still only working half days and avoiding prolonged standing (Tr. 117). Plaintiff was noted to be highly motivated (Tr. 115), even adamant about being able to return to work (Tr. 119, 121). Yet, walking for twenty minutes aggravated his back (Tr. 110). Notwithstanding his efforts, eight weeks of physical therapy and six weeks of

---

1. The remand was an opportunity for the Commissioner to correct an earlier error and to attempt again to sustain the burden at Step 5 of the Sequential Evaluation to demonstrate that there are a significant number of jobs in the national or regional economy that a worker with Plaintiff's limitations could perform.

work hardening did not achieve their stated goals.

A third course of physical therapy, occurring three times a week with home exercises, began on December 11, 1991, with the work hardening program put on hold (Tr. 122). Dr. Weiss recommended the therapy include anti-inflammatory medication. Plaintiff continued to experience pain in the distal aspect of the left thigh with prolonged walking (Tr. 147). By February 5, he had tolerance for the intensity of the therapy program and progress continued into March. He still had persistent pain in the left buttock and lumbar paraspinal muscles radiating into the thigh and calf (Tr. 142). Of greatest significance, he continued having difficulty performing activities that required prolonged sitting or standing (Tr. 142).

On March 30, 1992, his Discharge Summary noted continued intermittent numbness and pain in his lower extremity primarily associated with long term sitting (Tr. 141). His objective tests showed minimal bulging, no significant canal stenosis, mild neural foraminal stenosis bilaterally at L4–5, decreased pinprick at the L4 distribution on the left and normal nerve conduction. There is nothing in the medical record that shows a capacity beyond that indicated in his physical therapy and working hardening program records. While there was some initial progress, by January 6, 1992, his symptoms had returned to their normal level of intensity (Tr. 99).

A consulting examiner for the state, Dr. Elizabeth Edmond, M.D., saw Plaintiff in March 1996 (Tr. 163–64). She did not have his CT scan or MRI or EMG available. She also did not have the multiple results from his physical therapy or work hardening reports. Nevertheless, she gave a residual functional capacity evaluation that placed no limitations on Plaintiff's ability to lift, stand, walk, sit, and no other restrictions (Tr. 165–67). She acknowledged that her opinion might be different if she had access to Plaintiff's MRI or EMG (Tr. 168).

IV. *ANALYSIS*

Based on Dr. Edmond's report, in 1996 ALJ Boham found Plaintiff could perform a full range of light work and applied Grid Rule 201.10 to find Plaintiff not disabled (Tr. 16). If Plaintiff was limited to sedentary work, as would be the case if his subjective testimony were credited, Grid Rule 1201.10 would direct a finding of disabled. In the 1998 Report adopted as the opinion of this Court, it was noted that SSR 83–10 described light jobs as commonly requiring being on one's feet up to two-thirds of the work day, and thus standing or walking for a total of six out of eight hours. While it may be that certain light-level jobs involve a lesser amount of walking and could be performed substantially in a seated and standing position, no such evidence exists in the 1996 administrative record. This Court's former ruling concluded:

> While plaintiff's EMG in 1993 was normal, his MRI did show a mild bulging disc at L4–5. This was confirmed by various x-rays and other studies. It is also apparent that Dr. Edmond did not have available to her the results of plaintiff's physical therapy or work hardening program. Because the goal of the work hardening program throughout was an effort to return plaintiff to a capacity to perform heavier exertional activity, it must be assumed that his program involved walking to some extent as would be necessary to perform light work or heavier work. Yet, there is no indication that plaintiff through the six-week program was ever able to work beyond a half day and at an exertional level involving more than 15 pounds. In order to use the grid at the light exertional

level, the worker must be able to stand and/or walk for approximately six hours and work for eight hours.

**Given the limitation of available data for Dr. Edmond to form her opinion, as well as her own disclaimer as to its reliability in light of her not having certain objective test[s], her report does not constitute substantial evidence to warrant a finding that plaintiff can perform a full range of light work.** *Nor is there any other evidence that would demonstrate a capacity of plaintiff to stand or walk six out of eight hours.* His failed efforts in the work hardening program and limited improvements in extended physical therapy demonstrate plaintiff cannot sustain a full or wide range of light work for an eight-hour workday. Thus, there is not substantial evidence in the record to uphold the finding of the ALJ.

In the present case, the VE indicated that according to plaintiff's testimony he *could* perform a full range of sedentary work. **For reasons noted above, there is not substantial evidence to show that he can perform a full range of light work.** Yet, there remains a significant unanswered question—are there a substantial number of jobs in the limited range of light work that involves a minimum of walking and possibly work in the 10–15 pound exertional range not involving bending, stooping, reaching or other activities in which plaintiff appears to be limited? To obtain such information, further and targeted inquiries as to plaintiff's residual functional capacity need to be answered. It would seem appropriate that plaintiff's treating physician be directed such question. If plaintiff is capable of performing a limited range of activities at this exertional capacity, then further VE testimony would be necessary to determine whether there are a substantial number of such jobs that would fall within this

reduced capacity for light exertional activity.

December 30, 1998, Report and Recommendation at 14–15 (Tr. 249–50) (emphasis added). Thus, with the evidence not supporting a finding that Plaintiff could perform a full range of light work to allow a "not disabled" finding under Rule 202.11, and with Plaintiff being disabled under Rule 201.10, the case was remanded to the Commissioner to determine if Plaintiff could perform a limited range of light level jobs and whether these were sufficient in number to warrant a finding of not disabled.

The 1998 Report and Recommendation noted no new medical evidence from mid–1993 until March 1996, and that Dr. Edmond's opinion was not sufficient evidence because she formed it without having available certain objective tests and his physical therapy and work hardening results. Thus, the Report recommended that the ALJ get a residual functional assessment from Plaintiff's treating physician (Report at 15, Tr. 250). The new ALJ assigned to the case, Judge Wilenkin, obtained neither new medical evidence nor a more fully informed supplemental opinion from Dr. Edmond (upon whom ALJ Bohan relied). Instead, he took supplemental vocational testimony from Dr. Peter G. Fotiu. While noting that he had his "own particular view" about the 1998 Report and Recommendation, he acknowledged that was not the issue on remand and "we can leave that go by the, by the wayside" (Tr. 277). ALJ Wilenkin also ignored the teaching of that Report on the same page as the remand recommendation that the current administrative record did not have "evidence that would demonstrate a capacity of plaintiff to stand or walk six out of eight hours." (Report at 15, Tr. 250). If additional medical evidence had been obtained, or if Dr. Edmond had given a supplemental opinion with a more ade-

quate basis, it is possible that the new administrative record would have evidence to support such a finding. Yet, on this issue, we have virtually the same record upon which this Court determined there was not sufficient evidence to uphold a finding that Plaintiff could do those light exertional jobs that required him to stand or walk six out of eight hours.

In his hypothetical question upon which the new denial of benefits relies, ALJ Wilenkin assumed a worker with "the residual functional capacity to stand six of eight hours of an eight-hour work-day" (Tr. 282). Based on Dr. Fotiu's answer to this hypothetical question, Judge Wilenkin found Plaintiff could perform a significant number of jobs, including 15,000 assembler, sorter, packager, and inspection jobs in the Detroit area and 28,000 such jobs in the state (Tr. 321). A vocational expert's response to a flawed hypothetical question cannot serve as substantial evidence under 42 U.S.C. 405(g).[2] While SSR 83–10 notes that a full range of light jobs require the ability to stand and walk six or eight hours, and that "relatively few unskilled light jobs are performed in a seated position," the remand record does not inform this Court whether there is a substantial, albeit limited, number of unskilled light jobs that allow for a sit/stand opinion with the total time standing being under six hours, or possibly well under that.

ALJ Wilenkin also made a credibility finding that "claimant's testimony" was not credible and consistent with the evidence. This was based on the prior written hearing testimony and Judge Wilenkin's refer-

ences to those selected portions of the physical therapy records showing some improvement and portions of Dr. Edmond's physical findings. He also found Plaintiff's daily activities-including dusting, chores, attending church, fixing meals, driving, reading, and visiting others-to be inconsistent with severe and disabling back pain. Yet, these references do not demonstrate an ability "to stand six of eight hours of an eight hour work-day." Neither these references nor anything in the new administrative record alters this Court's earlier determination that "there [is not] any other evidence that would demonstrate a capacity of plaintiff to stand or walk six out of eight hours." (Report at 15, Tr. 250).

Thus, with only Dr. Fotiu's response to a flawed hypothetical question, there again is not substantial evidence in the record to uphold the determination of the ALJ. As noted above, Plaintiff's counsel called to the Appeals Council's attention the discrepancy between ALJ Wilenkin's hypothetical question-which included an ability to stand for six of eight hours-and this Court's prior determination that the record then before the Court would not support such a factual finding. In the earlier Report, it was noted that after an error is found in the Commissioner's determination, the Court must determine whether to remand for an award of benefits or for further administrative proceedings:

> *Faucher v. Secretary of HHS*, 17 F.3d 171, 176 (6th Cir.1994), and *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir.1994),

---

2. *See, e.g., Varley v. Secretary of HHS*, 820 F.2d 777, 779 (6th Cir.1987) (hypothetical question must accurately portray claimant's "individual physical and mental impairments"); *Cole v. Secretary* of HHS, 820 F.2d 768, 775–76 (6th Cir.1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed

accurately portray the claimant's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir.1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir.1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

hold that it is appropriate for this Court to remand for an award of benefits only when "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." This entitlement is established if "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Faucher* citing *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir.1985). Under the standards set by *Faucher*, on the present record it cannot be said that "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." Nor can it be said that the record is fully developed because further factual questions remain whether plaintiff can perform a limited range of light exertional activities for an eight-hour workday and, if so, whether there are a substantial number of light level jobs that such a person could perform.

The first question required further information, possibly from plaintiff's treating physicians, concerning his residual functional capacity for limited light exertional activities for an eight-hour workday. The second question requires vocational expert testimony to a proper hypothetical question concerning specific light jobs that might accommodate plaintiff's limitations.

December 30, 1998, Report and Recommendation at 16 (Tr. 251).

While the current decision is "clearly erroneous," the record has changed little on the remand, and it is hardly more complete on the question for which the remand was provided to the Commissioner. The fact that the Commissioner has had two opportunities to deny Plaintiff benefits in a legal fashion-and has still failed to do so-is a factor this Court can consider, along with Plaintiff's age and the significant delays involved.

Indeed, in this current Court review and in the 1998 Court review, had the Commissioner requested under sentence six of 42 U.S.C. § 405(g) that this Court remand the case in order for the Commissioner to develop appropriate vocational testimony, this statute would require a denial of such a request because of the Commissioner's inability to demonstrate "good cause for the failure to incorporate such evidence into the record in a prior proceeding." [3] In 1980, Congress added new and specific limitations to sentence six remands at the request of a party. The Supreme Court in *Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), made it clear that Congress, while placing limitations on a federal court's power to grant sentence six remands, did not intend "to limit a district court's ability to order remands under sentence four." *Id.* at 101, 111 S.Ct. 2157. It was under this sentence four authority of § 405(g) that we ordered the remand the last time. Yet, *Melkonyan* also stressed the *policy* behind the 1980 amendments to sentence six of § 405(g) imposing these limitations, which was "to speed up the judicial process so that these cases would not just go on and on and on." *Id.* (quoting Congressman Pickle, 125 Cong. Rec. 23383 (1979)). Although this Court, in exercising its discretion under sentence four of § 405(g) on whether to remand for an award of benefits or for further administrative proceed-

---

**3.** The legal errors in both the 1996 and the 2000 ALJ decisions-(i) the Grid cannot be used unless the worker can perform a full range of work at the designated exertional level; (ii) a hypothetical question to a vocational exert must accurately describe a worker's limitations-were not new or difficult doctrines, but well established principles of Social Security law at the time of both of Plaintiff's administrative hearings.

ings, is not bound by he specific limitations Congress imposed on sentence six remands, the Congressional policy behind those 1980 amendments to sentence six can help to inform this Court's judgment under sentence four in a case where the Commissioner has already been provided an opportunity to correct an error and years have passed and there are still errors in the administrative record.

■ Plaintiff is approaching fifty-nine years of age. He applied for benefits over seven years ago, on June 23, 1994. He had an extensive work history and earned good wages (Tr. 38). His work hardening program records demonstrate his hard efforts and strong motivation to return to work (Tr. 109, 113, 115, 119). Plaintiff has established a prima facie case of entitlement, and the Commissioner has failed to show good cause for failure to adduce relevant evidence to deny Plaintiff benefits on two occasions. It is time to end this case and to award Plaintiff benefits. There is substantial case authority allowing this. *See, e.g., Morales v. Apfel,* 225 F.3d 310 (3d Cir.2000) (two ALJ hearings and ten year delay, citing *Podedworny v. Harris,* 745 F.2d 210, 222 (3d Cir.1984), "[t]he decision to direct the district court to award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits."); *Curry v. Apfel,* 209 F.3d 117 (2d Cir.2000) (six year delay); *Nielson v. Sullivan,* 992 F.2d 1118 (10th Cir.1993) (age and delay); *Ragland v. Shalala,* 992 F.2d 1056, 1060 (10th Cir.1993) ("In light of the Secretary's patent failure to satisfy the burden of proof at step five, and the long delay that has already occurred as a result of the Secretary's erroneous disposition of the proceedings, we exercise our discretionary authority to remand for an immediate award of benefits."); *Randall v. Sullivan,* 956 F.2d 105, 109 (5th Cir.1992)

(remanding the case to award benefits where it determined that because of the extensive medical record, it would be "unconscionable to remand this eight year old case to the Secretary for further review"); *Allen v. Bowen,* 881 F.2d 37, 44 (3d Cir. 1989) (where claimant established prima facie case of entitlement, record was fully developed, and Secretary failed to show good cause for failure to adduce relevant evidence, no reason to remand).

Some courts have shown strong displeasure with repeated, albeit erroneous, denials of benefits by the Commissioner, particularly in light of the many levels of administrative review-initial consideration, reconsideration, hearing and Appeals Council-in which to remedy the errors. For example, *Sisco v. United States Department of Health and Human Services,* 10 F.3d 739, 746 (10th Cir.1993), noted:

> Plaintiff's disability has been evaluated by an adjudicatory body no fewer than ten times over the past several years— eight of which have been at various levels in front of the Secretary. In the meantime, Plaintiff has lived on a meager income and tried to support a teenage son. As far as quantum of proof, Plaintiff has exceeded what a claimant can legitimately be expected to prove to collect benefits under the Act. Her case stands unchallenged. The record reveals that the ALJ has resented Plaintiff's persistence, refused to take her disease seriously, and at times treated her claim with indifference or disrespect. The Secretary is not entitled to adjudicate a case *"ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion." *Thaete* [*v. Shalala* ], [826 F.Supp. 1250], at 1252 [D. Colo.1993] (citing *Sanders v. Secretary of Health and Human Services,* 649 F.Supp. 71, 73 (N.D.Ala.1986)).

In *Podedworny v. Harris*, 745 F.2d 210, 222 (3d Cir.1984), the court faced a second appeal after a five and a half year delay:

In *Smith v. Califano*, 637 F.2d 968, 973 n. 1 (3d Cir.1981), ... Judge Higginbotham noted:

These deficiencies in the findings of the ALJ are not attributable to any error of the claimant.... Smith has already had two hearings before an ALJ, followed by two petitions to the Appeals Council, two appeals to the United States District Court ... and an appeal to this court.... **Must an indigent claimant, who has already battled for seven years, wait with the patience of Job for yet another remand before he can collect the relatively modest amounts available through such an award? We think not**.... [T]he majority believes a further remand would be unnecessary and a contravention of fundamental justice.

We also are unwilling to remand this case to the Secretary for the record to be further clarified when the appellant already is before this court on a second appeal, after numerous errors of procedure and law by the Department of Health and Human Services. He has waited for over five and one-half years to have his claim for Social Security disability insurance benefits properly determined. *Cf. Weir ex rel. Weir v. Heckler*, 734 F.2d 955, 956–57 (3d Cir. 1984) (discussing problems in determining eligibility for disability benefits). If it would not be impossible for the Secretary to repair the record, it would at least be grossly unfair to give her another chance to do so under these circumstances. Where further administrative proceedings would simply prolong appellant's waiting and delay his ultimate receipt of benefits, reversal is especially appropriate. *Tennant v. Schweiker*, 682 F.2d 707, 710 (8th Cir.1982); *Lewin v.*

*Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

Additionally, Judge Posner in *Wilder v. Apfel*, 153 F.3d 799 (7th Cir.1998), lamented:

Three years ago almost to the day, we reversed the denial of social security disability benefits to Rosie Wilder, *Wilder v. Chater*, 64 F.3d 335 (7th Cir.1995), holding that the decision of the administrative law judge was unreasonable in light of the record before him. On remand, further evidence was taken, benefits were again denied (by a different administrative law judge), the district court (a different district judge) again affirmed, and **we again reverse on the same ground as we did in our original decision. But this time, to bring the charade to an end, we order** the Social Security Administration to award Wilder the **benefits** that she applied for.

\* \* \* \* \* \*

**Given the obduracy evidenced by the action of the administrative agency on remand,** we remand the case to the agency with directions that the application for benefits be granted. *Micus v. Bowen*, 979 F.2d 602, 609 (7th Cir.1992); *see Hatcher v. Secretary, Dept. of Health & Human Services*, 898 F.2d 21 (4th Cir.1989); *Woody v. Secretary of Health & Human Services*, 859 F.2d 1156, 1162–63 (3d Cir.1988); *Carroll v. Secretary of Health & Human Services*, 705 F.2d 638, 644 (2d Cir.1983).

*Id.* at 801, 804 (emphasis added).

Although the present case probably involves mere negligence on the Commissioner's part, and not "obduracy" or bad faith, Plaintiff has established his prima facie case, and has done enough to be awarded benefits without a third review by the Commissioner.

**1152**

## V. *RECOMMENDATION*

For the reasons stated above, it is recommended that defendant's motion for summary judgment be denied, that Plaintiff's motion for summary judgment be granted, and that the case be remanded for an award of benefits.

 The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.