**Troy DANIELS for Marty DANIELS (deceased), Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. CIV.A.00–K–1677.**

United States District Court, D. Colorado.

Sept. 30, 2002.

Frederick W. Newall, Colorado Springs, CO, for Plaintiff.

Yvette G. Keesee, Social Security Administration Office of General Counsel, Denver, CO, for Defendant.

### MEMORANDUM DECISION ON APPEAL

KANE, District Judge.

Troy Daniels on behalf of his deceased father, Marty Daniels ("Mr.Daniels"), appeals the final decision of the Social Security Commissioner ("Commissioner") denying Mr. Daniels Social Security Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433. For the reasons set forth below, I reverse the Commissioner's denial of benefits.

### BACKGROUND

Marty Daniels was born in 1947, and died on April 27, 1999. He was a high school graduate and Air Force Veteran, who served in the Philippines, Thailand and Vietnam. From the early 1960s until January 1996, Mr. Daniels earned his living as a telephone service and repair man at the same company. R. at 274, 336–37.

Mr. Daniels was diagnosed with rheumatoid arthritis in 1980. R. at 741. Mr. Daniels' treating physician, Dr. Lawrence C. Anaya, confirmed this diagnosis in November 1992, and also noted at this time that Mr. Daniels suffered from alcoholic hepatitis, a history of chronic alcohol abuse and hyperglycemia. R. at 446.

In January 1994, Mr. Daniels visited Dr. Steven Myers of the Colorado Springs Orthopaedic Group. R. at 735. Dr. Meyers noted rheumatoid deformities in both of Mr. Daniels' feet. *Id.* A year later, Dr. Meyers performed a metatarsophalangeal joint arthrodesis on Mr. Daniels' left foot to correct progressive deformities and to relieve pain. R. at 728. At that time, Dr. Meyers noted "obvious rheumatoid deformities in the hands and feet." *Id.* On March 15, 1995, Dr. Meyers released Mr. Daniels to full duty work without restrictions. R. at 730.

By May 1995, Dr. Anaya had begun treating Mr. Daniels with Prozac for depression, which Mr. Daniels attributed to stress at work. R. at 443–44. Mr. Daniels testified that, because of his arthritis, his co-workers "covered" for him by doing tasks he was unable to perform. R. at

220. For example, Mr. Daniels said he was unable to carry ladders because of shoulder problems and could not do pole work because he was afraid he would lose his grip. R. at 221.

In July 1995, Mr. Daniels was admitted to Parker Valley Hope where he was treated for alcohol dependence and major depressive disorder. R. at 336. In December of this same year, he was admitted to Parkview Episcopal Medical Center for detoxification, at which time consulting physician Dr. Alfredo Vargas noted "nodules in both forearms, close to the elbows and ulnar deviation in [his] right hand." R. at 369–370. Less than two weeks after his discharge, on January 2, 1996, Mr. Daniels was re-admitted for detoxification and diagnosed as suffering from major depression. R. at 406, 400.

On January 22, 1996, Mr. Daniels was terminated from his job. A month later, he filed for Disability Insurance Benefits, claiming he could no longer perform his job because of his arthritis and could not keep a job because of his alcoholism. R. at 262, 306.

The Commissioner denied his request for disability benefits in June 1996, based in part on a report by consulting physician Dr. Stephen Batuello. R. at 249–52. Based on an examination on April 27, 1996, Dr. Batuello found Mr. Daniels had a "well documented history of rheumatoid arthritis" which had begun to "show morphologic change." According to Dr. Batuello, X-rays taken during the exam revealed "advanced arthritic changes" in Mr. Daniels' right hand and a "degenerative irregularity" in his left foot. R. at 435–36. Dr. Batuello also noted Mr. Daniels' arthritis was a significant problem in that "routine analgesic therapy is supplemented with alcohol for alleviation of pain." R. at 432. Notwithstanding the limitations caused by Mr. Daniels' arthritis, Dr. Batuello found Mr. Daniels could perform work and work-related activities with the caveat that "he would be unable to maintain meaningful employment if he binge drinks, as he says, for three to four days at a time without reporting to work." R. at 433.

State agency physician Dr. Karl T. Chambers reviewed Dr. Batuello's evaluation and stated it was "very inadequate" from a musculoskeletal standpoint. R. at 302. After reviewing x-rays of Mr. Daniels' right hand and left foot, Dr. Chambers confirmed "ulnar deviation" as well as significant changes of the wrist joint and arthrodesis in the toes. Dr. Chambers specifically noted he found it "a little bit unusual to see [rheumatoid arthritis] confined to isolated joint areas based on the physical findings," and that his assessment of Mr. Daniels' residual functioning capacity (RFC) was based on the physical findings and x-rays then available, which did not include x-rays of Mr. Daniels' left upper extremity or other joints. R. at 301.

Mr. Daniels requested reconsideration of the Commissioner's initial denial of benefits, R. at 253, and shortly thereafter again sought treatment from Dr. Anaya. R. at 441. Mr. Daniels reported "flare ups of his rheumatoid arthritis" and that he had been taking over-the-counter medications because they were "working just as well" as prescription medications. R. at 441. He also complained of weight loss, fatigue and difficulty sleeping. R. at 441. Dr. Anaya's diagnosis included depressive disorder and rheumatoid arthritis. R. at 441.

In August, 1996, the Social Security Administration denied Mr. Daniels' benefits request. R. at 255–57. Mr. Daniels then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 5, 1997. By the date of this hearing, Mr. Daniels was under Dr. Anaya's treatment for diabetes, had been hospitalized for hyperglycemiaic hypersomolar

coma, pancreatitis, diabetes and hypertension, remained under treatment for depression, and, since 1993, had lost more than thirty pounds. R. at 438, 461, 428, 444, 438. In addition to receiving medical evidence documenting Mr. Daniels' medical history, the ALJ took testimony at the hearing from Mr. Daniels and from a vocational expert, Michael Fitzgibbons ("the VE"). R. at 217–46.

In a decision dated December 29, 1997, the ALJ determined Mr. Daniels was not disabled and therefore denied his request for disability benefits. In so doing, the ALJ analyzed the evidence of record and followed the sequential steps for evaluating disability outlined in Social Security Regulation 404.1520(a). 20 C.F.R. § 404.1520(a) (2001).

At step one, the ALJ found Mr. Daniels had not engaged in substantial gainful activity since January 22, 1996. R. at 211.

At step two, the ALJ found Mr. Daniels, impairments were severe. R. at 211. Specifically, the ALJ found evidence supporting a conclusion that Mr. Daniels had rheumatoid arthritis, status post left foot fusion and diabetes, which caused significant vocationally relevant limitations. R. at 204, 211. The ALJ also considered medical evidence concerning Mr. Daniels' alcoholism and depression, but concluded these problems were not severe as they imposed no more than minimal restrictions on his capacity to perform basic work activities. R. at 206. The ALJ noted Mr. Daniels' treatment for depression was "only sporadic" and improved when he was compliant with his medication. *Id.* The ALJ relied on Mr. Daniels' testimony that he had not used alcohol for several months as evidence that his alcoholism was in remission. *Id.*

The ALJ found Mr. Daniels' impairments were insufficient to establish disability at step three because they did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Appendix 1, Subpart P, Regulation No. 4. R. at 211. The ALJ did not find Mr. Daniel's statements concerning his impairments and their impact on this ability to work entirely credible. R. at 211. In support of this finding, the ALJ noted that none of Mr. Daniels' examining or treating physicians had set restrictions on his ability to work. R. at 209. As further evidence for his findings, the ALJ pointed to Mr. Daniels' use of nonprescription medication, failure to consistently follow up on doctors' appointments and stipulation that he was ready, able and willing to work. *Id.*

At step four, the ALJ found Mr. Daniels was unable to perform his past relevant work as a telephone service repairman, R. at 211, thus shifting the burden of proof to the Social Security Administration at step five to show there were other jobs existing in significant numbers to which Mr. Daniels could make a successful vocational adjustment considering his age, education, work experience and RFC. R. at 210.

At step five, the ALJ relied principally upon the consulting physician's reports to find that Mr. Daniels retained the RFC to lift and carry ten pounds with his right hand occasionally and twenty pounds with his left hand occasionally and lift less than ten pounds with his left hand frequently and only about ten to twenty pounds with both hands, but that his upper right extremity was further limited by no more than occasional fingering, no pushing and pulling, and no frequent handling, and that he could not climb, stoop, balance, kneel, crouch or crawl more than occasionally and had to avoid concentrated exposure to cold, humidity and hazards. R. at 208, 211. Although the ALJ found Mr. Daniels' capacity for the full range of light work was diminished by these limitations, R at 211–12, he found based on, testimony from the VE that Mr. Daniels was capable of mak-

ing an adjustment to work which existed in significant numbers in the national economy, namely fast food worker, security monitor and usher. R. at 212. As a result, the ALJ concluded Mr. Daniels was not disabled at any time through the date of the decision. R. at 212.

In January 1998, Mr. Daniels requested that the Social Security Appeals Council review the ALJ's December 29, 1997 determination. R. at 198. Six months later, Mr. Daniels again applied for social security benefits, which the Commissioner granted on January 1999 based on a finding of disability from July, 1998 forward. R. at 195.

In appealing the ALJ's denial of his first disability benefits application, Mr. Daniels argued the ALJ had erred in finding no disability seven months before the Commissioner's July 1998 disability determination, especially given the progressive nature of his medical conditions and the ALJ's reliance on a consultative examination that occurred more than 18 months before his non-disability determination. In support of these contentions he submitted to the Appeals Council additional documentation of his medical condition before and after the ALJ's decision as new evidence concerning the progressive nature of his health problems. R. at 7–197. Also added to the record before the Appeals Council was a December 27, 1997, report from treating physician Dr. Anaya stating that Mr. Daniels had not been capable of performing either sedentary or light work on a sustained basis since before December 31, 1994.[1] R. at 455–58.

On June 21, 2001, the Appeals Council declined review of the ALJ's determination, making it the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). R. at 7–9. Because Mr. Daniels died on April 27, 1999, this appeal was brought on his behalf by his son, Troy Daniels ("Claimant").

## STANDARD OF REVIEW

I review the Commissioner's decision to determine whether his factual findings were supported by substantial evidence in light of the entire record and whether he applied the correct legal standards. *See Hinkle v. Apfel,* 132 F.3d 1349, 1351 (10th Cir.1997). Substantial evidence is that which a reasonable person would accept as adequate to support that determination. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495, 1498 (10th Cir.1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir.1992). I examine the "record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Shepherd v. Apfel,* 184 F.3d 1196, 1199 (10th Cir.1999) (internal quotation marks and citations omitted). While I must examine the record meticulously in its entirety, I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *See Musgrave,* 966 F.2d at 1374. I will reverse the Commissioner's denial of

---

**1.** There is evidence in the record that the ALJ should have considered Dr. Anaya's report, which Mr. Daniels transmitted via facsimile to the ALJ on December 31, 1997, before issuing his decision on Mr. Daniels' claim. R. at 455. Though the ALJ left the record open for 20 days after the November 27, 1997, hearing, correspondence in the record indi-

cates the ALJ granted Mr. Daniels' subsequent request that the record remain open until January 2, 1998, several days after the ALJ issued his decision. R. at 219, 157, 158. However, the parties did not raise this issue in the pleadings and its resolution is not necessary to decide this appeal.

benefits if I determine his decision was not supported by substantial evidence or if I find he failed to apply the correct legal standard or to provide me with a sufficient basis to determine that appropriate legal principles have been followed. *Nielson v. Sullivan,* 992 F.2d 1118, 1119–20 (10th Cir. 1993).

## DISCUSSION

A person is disabled within the meaning of the Social Security Act if he is blind or is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 416(i). The Commissioner has established a five-step process for determining whether a claimant is disabled under this definition and is thus entitled to disability benefits. 20 C.F.R. §§ 404.1520, 416.920; *see also Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir.1988) (describing the five steps in detail). The claimant bears the burden of proof through step four of the analysis. *Nielson,* 992 F.2d at 1120. Once the Commissioner has determined at step four that the claimant cannot perform his past relevant work, the claimant has established a prima facie case of disability. *Id.* At step five, the burden shifts to the Commissioner to show the claimant can perform work that exists in the national economy, taking into account his residual functional capacity, age, education and work experience. *Id.*

Here, the ALJ reached the fifth step of the analysis. R. at 211. Thus, the Commissioner bore the burden of proving Mr. Daniels could perform a significant number of jobs in the national economy. R. at 210. The ALJ's decision that the Commissioner met this burden must be supported by substantial evidence in the record. *Nielson,* 992 F.2d at 1121.

Claimant maintains the Commissioner's final decision to deny benefits should be reversed for at least two reasons that merit discussion: (1) the ALJ was not justified in relying upon the VE's testimony; and (2) the Commissioner failed to apply the correct legal standard with respect to new evidence, specifically the treating physician's opinion, provided to the Appeals Council after the ALJ issued his decision.[2]

### A. *Reliance on Vocational Expert's Testimony*

In concluding at step five that Mr. Daniels was not disabled within the meaning of the Social Security Act, the ALJ relied upon the VE's testimony to find Mr. Daniels was capable of adjusting to work existing in significant numbers in the national economy. R. at 210, 212, 233–45. Specifically, the VE testified Mr. Daniels could perform work as a fast food worker, security monitor and usher.

Claimant asserts the ALJ was not justified in relying upon the VE's testimony and, therefore, that the ALJ's finding that Mr. Daniels was capable of performing work existing in significant numbers in the national economy was not supported by substantial evidence. I agree for two reasons. First, the transcript reveals conflicts between the VE's testimony and the exertional requirements specified in the Dictionary of Occupational Titles ("DOT") for which the ALJ did not elicit a reasonable explanation. R. at 233–245. Second, notwithstanding these conflicts, the exer-

---

2. Claimant also urges this court reverse the Commissioner's decision because the ALJ did not explain why Mr. Daniels did not meet or equal a listing as disabled at step three of the five-step process. However, I need not address this issue, because the issues identified above both provide grounds for reversal.

tional requirements for the jobs the VE testified Mr. Daniel could perform are inconsistent with the ALJ's findings of Mr. Daniels' RFC. R. at 211–12.

In the Tenth Circuit, whenever there is a conflict between the DOT and expert testimony, the ALJ "must investigate and elicit a reasonable explanation" for the conflict "before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir.1999); *see also Campbell v. Bowen*, 822 F.2d 1518, 1523 n. 3 (10th Cir.1987) ("The Dictionary compels conclusions different than those reached by the vocational expert.").

As stated, the VE testified and the ALJ found Mr. Daniels could perform work as a fast food worker, security monitor and usher, notwithstanding limitations in use of his dominant right hand to no more than occasional fingering, no pushing and pulling, and no frequent handling. R. at 211–122, 234. However, the VE's testimony conflicts with the exertional requirements specified in the Dictionary of Occupational Titles ("DOT") for all three jobs. R. at 233–245.

According to the VE's testimony, the DOT listing for fast food workers indicates the job requires "frequent" fingering, as well as "constant" handling and reaching. R. at 237; 1 DICTIONARY OF OCCUPATIONAL TITLES 241 (4th ed.1991) (occupational code 311.472–010). The VE testified that the fast food jobs he believed were within Mr. Daniels' capabilities included grabbing sandwiches, putting them into a sack, reaching through an order window to take money and provide change, and operate a cash register. R. at 238–40. The VE maintained that the these activities required fingering, handling and reaching for

no more than 20 minutes out of each hour worked and, thus, would be "on an occasional basis." [3] R. at 240. On cross-examination, however, the VE admitted that such activities might be required on a "frequent basis" during lunch hours or other busy times of the day. R. at 240–41.

The VE also testified Mr. Daniels could work as an usher or ticket taker. R. at 237. The VE said he disagreed with the "Specific Occupational Selector" classification of ticket taker as an occupation requiring "frequent reaching and handling." R. at 243. Rather, the VE said he believed handling objects would be on an occasional basis. *Id.* This testimony was at odds with the DOT's description of tasks performed by ushers, which according to the DOT includes distributing programs, and the DOT description of ticket taker, which requires collecting admission tickets—tasks that common sense dictates would require frequent fingering and handling for at least some portion of the work day. *See* 1 DOT at 253 (occupational codes 334.667–010 and 344.677–014).

Finally, the VE initially testified that Mr. Daniels could work as a security monitor, because the position "does not require any reaching, handling or fingering." R. at 244. Yet, he confirmed that the DOT code for the position was 379.367–010, which states a person in this job "pushes a button" to maintain surveillance of a location and "adjust[s] monitor controls," both of which obviously require fingering and handling. R. at 245; 1 DOT at 281 (occupational code 379.367–010).

The ALJ asked the VE to explain the differences between his testimony and the DOT job descriptions. R. at 237. With respect to fast food worker, the VE said his conclusions were based "just from ob-

---

3. The DOT defines "occasionally" as an activity or condition that "exists up to 1/3 of the time," "frequently" as one that "exists 1/3 to 2/3 of the time" and "constantly" as one that "exists 2/3 or more of the time." 2 DOT at 1013.

servation and job analyses" performed two or three years before the hearing. R. at 237, 241. The VE also said he believed "to the best of [his] recollection" that he had performed a study of usher and ticket taker jobs, but that he had not performed a job analysis of surveillance security monitor. R. at 241–42. The ALJ denied Mr. Daniels' request that the VE be ordered to produce the reports of the studies on which he apparently based his conclusions. R. at 243.

Under these circumstances, the ALJ "failed to elicit a reasonable explanation" for the conflict between the VE's testimony and the job requirements stated by the DOT. As a result, the ALJ was not justified in relying upon the VE's testimony as "substantial evidence to support a determination of nondisability." *See Haddock*, 196 F.3d at 1091. Even if this were not the case, the ALJ's determination that Mr. Daniels was capable of working as a fast food worker, usher or security monitor is inconsistent with his finding that Mr. Daniels' use of his right upper extremity was limited to "no more than occasional fingering, no pushing and pulling, and no frequent handling." R. at 211–12. Therefore, the ALJ's finding that Mr. Daniels could perform work that exists in significant numbers in the national economy is not supported by substantial evidence, with the result that the Commissioner failed to meet his step-five burden of proof. This is sufficient grounds to reverse the Commissioner's denial of benefits. *See Evans v. Chater*, 55 F.3d 530, 533 ("lack of evidence that claimant could do *any* of the jobs cited by the ALJ [is] a ground for reversal;" emphasis in original); *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir.1987) (if Commissioner does not meet step-five burden, "the claimant is disabled for purposes of award of disability benefits.").

### B. *Failure to Consider Treating Physician's Opinion*

The Commissioner's decision is also subject to reversal based on his failure to consider properly new evidence Mr. Daniels submitted to support his request for review of the ALJ's determination. The Appeals Council must "consider any new evidence presented to it, if it is new, material, and relates to the time period before the ALJ's decision." *Tyson v. Apfel*, 107 F. Supp 2d 1267, 1271 (D.Colo.2000) (listing Appeals Council's failure to consider new evidence supporting plaintiff's claim as among reasons for reversing Commissioner's determination of nondisability and remanding for payment of benefits). Evidence presented to the Appeals Council, even if not before the ALJ, is also "part of the administrative record to be considered when evaluating the Secretary's decision for substantial evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir.1994).

As indicated above, the new evidence Mr. Daniels entered into the administrative record for the Appeals Council's consideration included a December 23, 1997, report from Dr. Anaya. In that report, Dr. Anaya indicated Mr. Daniels had not been capable of performing either sedentary or light work on a sustained basis since before December 31, 1994, R. at 456–58, which, under the Social Security Act, equates to Mr. Daniels being disabled no later than this date. *See* 42 U.S.C. § 416(i).

In explaining its reasons for denying Mr. Daniels' request for review of the ALJ's decision, the Appeals Council discussed with great specificity other new evidence concerning the deterioration of Mr. Daniels' health after the ALJ issued his December 29, 1997 decision. R. at 7–9. Such evidence, the Appeals Council stated, was "not material" to whether Mr. Daniels was disabled on or before December 29,

1997, the date of the ALJ's decision. *Id.* By contrast, the Appeals Council made no reference whatsoever to Dr. Anaya's report, which clearly was new, material and related to the time period before the ALJ's decision. *Id.* The Appeals Council's failure to address Dr. Anaya's opinion in its evaluation of the record violates the well established rule that the Commissioner must give substantial weight to a treating physician's opinion unless good cause is shown to disregard it. *Goatcher v. Shalala,* 52 F.3d 288, 289–90 (10th Cir.1995); *Byron v. Heckler,* 742 F.2d 1232, 1235 (10th Cir. 1984). Additionally, the Commissioner "must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled." *Goatcher,* 52 F.3d at 290; *Byron,* 742 F.2d at 1235.

The Commissioner asserts the Appeals Council considered Dr. Anaya's opinion by citing the council's statement that it considered Mr. Daniels' contentions and evidence, "but concluded that neither the contentions nor the additional evidence provides a basis for changing the [ALJ's] decision." R. at 7. Such a generic statement is hardly adequate, however, to satisfy the Commissioner's obligation to state specific, legitimate reasons for disregarding a treating physician's opinion. *See Goatcher,* 52 F.3d at 289–90; *Byron,* 742 F.2d at 1235. Perhaps cognizant of this fact, the Commissioner then argues Dr. Anaya's opinion does not support a change in the ALJ's determination because Dr. Anaya saw Mr. Daniels "only" ten times over a period of four and one-half years. This fact, however, establishes rather than undermines Dr. Anaya's status as a treating physician whose opinion was entitled to more weight, barring good cause, than those of the consulting physicians upon whom the ALJ relied.

The Commissioner next argues Dr. Anaya's report could be disregarded because it was a questionnaire requiring 'yes' or 'no'

answers without further comment. The Appeals Council did not cite this or any other basis for disregarding Dr. Anaya's report, however. Even if it had, the fact that a treating physician's opinion is conveyed through responses to a simple questionnaire does not, standing alone, justify disregarding that opinion where it is based on the physician's history of examining and treating the patient. The only authority cited by the Commissioner for disregarding a physician's opinion under these circumstances is *Frey v. Bowen,* 816 F.2d 508 (10th Cir.1987), in which the Tenth Circuit ruled the Commissioner erred in determining the claimant was not disabled based on a "check-the-box" form completed by a non-treating physician whose opinion was contrary to that of the claimant's treating physicians. *Id.* at 515. *Frey* is therefore distinguishable from this case, in which the form was completed by Mr. Daniels' treating physician based on a lengthy treatment history.

The Commissioner's failure to consider Dr. Anaya's December 27, 1997 report, and to give it substantial weight unless he could show good cause not to do so, resulted in a determination made under improper legal standards. As such, it is subject to reversal on this basis as well. *See Goatcher,* 52 F.3d at 289–90; *Byron,* 742 F.2d at 1236.

## CONCLUSION

The Commissioner did not carry his burden of proving Mr. Daniels retained the residual functioning capacity to perform jobs existing in significant numbers in the national economy. Additionally, by ignoring the treating physician's opinion, the Commissioner applied the wrong legal standard in weighing the medical evidence. For these reasons, I reverse the Commissioner's determination of nondisability and remand for an award of benefits.

Dr. Anaya's opinion that Mr. Daniels was disabled no later than December 31, 1994 contradicted that of consulting physician Dr. Batuello, whose sole examination of Mr. Daniels was conducted eighteen months before the ALJ issued his decision and whose opinion reviewing physician Dr. Chambers found "very inadequate" from a musculoskeletal standpoint. As Dr. Anaya was Mr. Daniel's treating physician, the Commissioner was required to give his opinion substantial weight unless good cause was shown to disregard it. *Goatcher*, 52 F.3d at 289–90. The Commissioner failed to do so, thereby applying an incorrect legal standard to its determination of Mr. Daniels' benefits application. When Dr. Anaya's opinion is considered in the context of the evidence as a whole, the Commissioner's decision that Mr. Daniels was not disabled at or before the ALJ's December, 1997 decision is "overwhelmed by other evidence in the record" and is thus not supported by substantial evidence. *See Musgrave*, 966 F.2d at 1374.